Youssef H. Hammoud (SBN: 321934)
Lauren Tegan Rodkey (SBN: 275830)
**PRICE LAW GROUP, APC**
6345 Balboa Blvd., Suite 247
Encino, CA 91316
T: (818) 600-5596
F: (818) 600-5496
E: youssef@pricelawgroup.com
E: tegan@pricelawgroup.com
*Attorneys for Plaintiff,*
*Mayra Aranda*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYRA ARANDA, | Case No. 2:21-cv-03451 |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | 1. FAIR CREDIT REPORTING ACT, 15 USC § 1681 *et al.* |
| NISSAN MOTOR ACCEPTANCE CORPORATION; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; and EQUIFAX INFORMATION SERVICES, LLC, | 2. CCRAA, Cal. Civ. Code § 1785 *et seq.* |
| Defendants. | |

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Mayra Aranda ("Plaintiff" or "Mrs. Aranda") through her attorneys, allege the following against Nissan Motor Acceptance Corporation ("NMAC"), Experian Information Solutions, Inc., ("Experian"), Trans Union LLC ("Trans Union"), and Equifax Information Services, LLC ("Equifax").

**INTRODUCTION**

1. Count I of Plaintiff's Complaint is based upon the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. al.* The FCRA is a federal statute that broadly regulates the credit reporting agencies and furnishers of credit information. Among other things, the FCRA prohibits credit reporting agencies and furnishers from reporting incomplete or inaccurate information on a consumer's credit report.

2. Count II of Plaintiff's Complaint is based upon the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785 *et seq*, which regulates credit reporting agencies and furnishers of information from reporting incomplete or inaccurate information on a consumer's credit report.

3. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**JURISDICTION AND VENUE**

4. Jurisdiction of the court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681.

5. Supplemental jurisdiction arises under 28 U.S.C. § 1367. The state law claims are so related to the claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

7. Defendants transacts business here; therefore, personal jurisdiction is established.

## **PARTIES**

8. Plaintiff Mayra Aranda is natural person residing in California.

9. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c) and Cal. Civ. Code § 1785.3(b).

10. Defendant NMAC is a "person" as defined by Cal. Civ. Code. § 1785.3(j).

11. Defendant NMAC is a multinational automobile manufacturer that sells and leases vehicles to consumers throughout the world. NMAC can be served at its principal place of business located at 1 Nissan Way, Franklin, Tennessee 37067-6367.

12. Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in

15 U.S.C. § 1681a(d), to third parties. Experian can be served at its principal place of business located at 475 Anton Blvd., Costa Mesa, CA 92626.

13. On information and belief, Experian disburses the *consumer reports* to third parties under contract for monetary compensation.

14. Defendant Trans Union LLC is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union can be served through its registered agent, Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

15. On information and belief, Trans Union disburses the *consumer reports* to third parties under contract for monetary compensation.

16. Defendant Equifax Information Solutions, LLC, is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). On information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree

Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 40 Technology Parkway South #300, Norcross, GA 30092.

17. On information and belief, Equifax disburses the *consumer reports* to third parties under contract for monetary compensation.

18. Defendant(s) acted through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

19. In or around 2007, Plaintiff entered into two (2) automobile lease contracts with Defendant NMAC.

20. Upon information and belief, the 2007 lease contracts were each thirty-nine (39) month leases.

21. In or around 2011, Plaintiff entered into another automobile lease contract with Defendant NMAC.

22. Upon information and belief, the 2011 lease contract was a thirty-nine (39) month lease.

23. Plaintiff does not owe any amount of money to Defendant NMAC with respect to the 2007 and 2011 lease contracts.

24. In or around April 2021, Plaintiff obtained her Experian, Trans Union and Equifax credit reports.

25. Plaintiff learned that Defendant Experian was inaccurately reporting her Nissan-Infiniti LT accounts as:

    a. Nissan-Infiniti LT Account (#290093XXXX), opened in July 2007, with a status as open and a balance of $5,940, and a comment stating "Full termination/balance owing."

    b. Nissan-Infiniti LT Account (#290093XXXX), opened in August 2007, with a status as open and a balance of $10,763, and a comment stating "Full termination/balance owing."

    c. Nissan-Infiniti LT Account (#290095XXXX), opened in January 2011, with a status as open and a balance of $9,019, and a comment stating "Full termination/balance owing."

26. Plaintiff learned that Defendant Trans Union was inaccurately reporting her Nissan-Infiniti LT accounts as:

    a. Nissan-Infiniti LT Account (#2900935XXXX), opened in July 2007, with a status as open and a balance of $5,940, and a comment stating "Full termination/balance owing."

b. Nissan-Infiniti LT Account (#2900936XXXX), opened in August 2007, with a status as open and a balance of $10,763, and a comment stating "Full termination/balance owing."

c. Nissan-Infiniti LT Account (#2900951XXXX), opened in January 2011, with a status as open and a balance of $9,019, and a comment stating "Full termination/balance owing."

27. The reporting by Defendant Trans Union shows that a balance began to report on all 3 accounts in October 2018, without ever decreasing or increasing since that time.

28. The reporting by Defendant Trans Union shows that there was a scheduled payment amount due each month on all 3 accounts from October 2018 until January 2021, that no amount was paid during those months and despite not making any of the alleged scheduled payments, there was no late payment history associated with the Accounts.

29. Plaintiff learned that Defendant Equifax was inaccurately reporting her Nissan-Infiniti LT accounts as:

a. Nissan-Infiniti LT Account (#xxxxxx9261), opened in July 2007, with a status as open and a balance of $5,940, and a comment stating "Lease – full termination."

b. Nissan-Infiniti LT Account (#xxxxxx4106), opened in August 2007, with a status as open and a balance of $10,763, and a comment stating "Lease – full termination."

c. Nissan-Infiniti LT Account (#xxxxxx7100), opened in January 2011, with a status as open and a balance of $9,019, and a comment stating "Lease – full termination."

30. The reporting by the Defendant CRAs was inaccurate because Plaintiff does not owe a balance on the Lease accounts opened in 2007 and 2011.

31. Moreover, the Defendant CRAs were reporting that the lease was terminated, which indicates that they were aware the lease contract ended.

32. In addition, the Defendant CRAs were reporting that the Accounts were a 39-month term.

33. However, despite this information, Defendant CRAs continued to report a balance associated with the Accounts, many years after the expiration of the lease terms.

34. For the 2007 lease contracts, Defendant CRAs were reporting a date of last payment in February 2011.

35. For the 2011 lease contract, Defendant CRAs were reporting a date of last payment in August 2013.

36. Defendant CRAs failed to follow reasonable procedures to ensure maximum possible accuracy with respect to the information being reported on Plaintiff's consumer credit report.

37. The reporting by Defendant CRAs gives the impression that the Accounts are still open and that Plaintiff still has a balance on all three (3) automobile lease accounts despite the lease contracts being terminated many years ago and no balance is owed on the Accounts.

38. Based on their reporting of the Accounts, the Defendant CRAs knew that the automobile leases were for 39 months and were fully terminated.

39. Further, the Defendant CRAs know or should know that reporting of Plaintiff's Accounts as open and with a balance more than ten (10) years after the Accounts were first opened was wrong.

40. However, despite possessing all of this information, the Defendant CRAs failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit file.

41. Upon information and belief, the balances associated with the automobile lease Accounts appeared on Plaintiff's credit reports sometime in 2018.

42. A cursory review of the reporting by Defendant CRAs would have alerted Defendants that the information being reported was inaccurate.

43. Upon information and belief, the Defendant CRAs prepared one or more credit reports concerning Plaintiff containing inaccurate information.

44. Defendant NMAC furnished information it knew or should have knew was inaccurate to the consumer credit reporting agencies.

45. Defendant NMAC was aware that Plaintiff's automobile leases were terminated and that she no longer owed any money on the accounts.

46. Despite this, Defendant NMAC furnished inaccurate information to the credit reporting agencies indicating that Plaintiff's accounts were still open and contained balances of $5,940.00, $9,019.00, and 10,763.00.

47. Defendants' inaccurate reporting of the Nissan-Infiniti LT accounts on Plaintiff's respective credit reports caused Plaintiff to suffer from a decreased credit score and credit worthiness.

48. The inaccurate reporting by Defendants' is materially misleading because it signals to prospective credit lenders that Plaintiff is still liable for the balances on the automobile lease accounts.

49. The inaccurate reporting by Defendants caused Plaintiff to suffer from emotional distress and mental pain and anguish, including but not limited to, stress, anxiety, confusion, embarrassment and headaches.

50. In or around April 2021, Plaintiff submitted a mortgage application in the hopes of purchasing a new residence.

51. The inaccurate reporting of the Nissan-Infiniti LT Account's adversely affected Plaintiff's debt-to-income ratio.

52. Plaintiff's mortgage application was submitted through an automated pre-approval process.

53. Plaintiff was unable to receive the automated pre-approval because her debt-to-income ratio did not meet a certain standard.

54. The debt-to-income ratio measures all of Plaintiff's monthly debts relative to her monthly income.

55. A mortgage lender adds up all of a persons' debts, including auto loan/leases, and divides the sum by the persons' gross monthly income to get a percentage.

56. The inaccurate reporting by Defendants made it seem as though Plaintiff had monthly payments due on the 3 automobile lease accounts, thereby significantly impacting her debt-to-income ratio.

57. Upon information and belief, if Defendants were accurately reporting the Accounts, Plaintiff would have received an automated pre-approval.

58. Plaintiff has stopped her new home search because she cannot make any offer without a mortgage pre-approval.

59. The thought of not being able to finally own a home because of the inaccurate reporting has caused Plaintiff immense emotional distress and mental pain and anguish.

60. Defendant's conduct was malicious and done with a willful and conscious disregard of the rights of the Plaintiff.

61. Defendants' conduct was negligent.

62. As a result of the above violations of the FCRA and the CCCRAA, Plaintiff suffered and continues to suffer injury to her feelings, stress, anxiety, mental anguish, embarrassment, humiliation, emotional distress, and negative impact to her credit, including a decreased credit score and credit worthiness.

63. Defendants are liable to the Plaintiff for her actual damages, statutory damages, punitive damages and costs and attorney's fees.

## COUNT I
**Defendants Experian Information Solutions, Inc., Trans Union LLC and Equifax Information Services, LLC**
**(Violations of the FCRA, 15 U.S.C. § 1681 *et seq.*)**

64. Plaintiff incorporates herein by reference all of the above paragraphs of this complaint as though fully set forth herein at length.

65. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair

credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

66. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

67. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

68. The FCRA prohibits consumer reporting agencies from making any consumer reports that contain any adverse items of information, other than records of convictions of crimes which antedate the report by more than seven years.

69. Defendants negligently and/or willfully violated 15 U.S.C. § 1681c(a)(5) by making a consumer report that contained adverse information that antedates the report by more than seven years;

70. The FCRA requires credit reporting agencies, like Experian, Trans Union and Equifax, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *15 U.S.C. § 1681e(b)*.

71. Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information pertaining to the automobile lease accounts that were opened over 10 years ago.

72. Consequently, Defendants routinely report inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681e(b) when Defendants possess information inconsistent with the reported information, and possess information establishing that the reported information is in fact inaccurate.

73. Defendants knew or should have known their obligations under the FCRA, especially pertaining to the automobile lease accounts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures.

74. Defendants are in possession of Plaintiff's tradeline information, including the date the automobile lease accounts were opened, the date of last payment, and notes indicating that the leases were fully terminated.

75. Defendants are also on notice by the fact that automobile lease accounts do not typically stay open for over 10 years.

76. Defendants inaccurately reported Plaintiff's Nissan-Infiniti LT accounts as "open" with a balance despite the accounts being closed many years ago and no longer having any balance.

77. The inaccurate reporting of Plaintiff's information has caused Plaintiff to suffer from stress, anxiety, headaches, frustration, confusion, and emotional and mental pain and anguish, a decreased score and decreased credit worthiness.

78. The inaccurate reporting of Plaintiff's information has caused her to receive a mortgage denial.

79. Defendants acts, as described above, were done willfully and knowingly.

80. Alternatively, Defendants were negligent, entitled Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

81. Defendants inaccurate credit reporting damaged Plaintiff's creditworthiness, as Defendants report the existence of a balance on three automobile lease accounts that were closed many years ago.

82. Defendants are a direct and proximate cause, as well as a substantial factor in causing actual damages and harm to Plaintiff.

83. Defendants are therefore liable for actual and statutory damages, punitive damages, attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

## Count II
### Defendant Nissan Motors America Corporation
### (Violations of the CCRAA, Cal. Civ. Code § 1785 *et seq.*)

84. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

85. Defendant NMAC violated the CCCRAA. Defendant's violations include, but are not limited to, the following:

   a. Defendant NMAC violated Cal. Civ. Code § 1785.25 by furnishing information on a specific transaction or experience to a consumer credit reporting agency when Defendant knew or should have known that the information was inaccurate.

   b. Defendant NMAC knew or should have known that the Plaintiff's automobile lease accounts from 2007 and 2011 were closed and no longer had a balance.

   c. Defendant NMAC knew or should have known that the Plaintiff did not owe any money to Defendant NMAC and the accounts were closed many years ago.

    d.  Each and every occasion where Defendant NMAC furnished inaccurate information about Plaintiff's Nissan-Infiniti LT accounts to a credit reporting agency is a separate violation under Cal. Civ. Code § 1785.31(2)(B);

86. Defendant NMAC 's acts, as described above, were done willfully and knowingly.

87. As a result of the foregoing violations of the CCCRAA, Defendant NMAC is liable to the Plaintiff for actual damages, statutory damages, punitive damages, and attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Mayra Aranda respectfully requests judgment to be entered against Defendants, Nissan Motors America Corporation, Experian Information Solutions, Inc., Trans Union LLC, and Equifax Information Services, LLC, for the following:

A. Declaratory judgment that Defendants Experian, Trans Union and Equifax violated the FCRA;

B. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A) for Plaintiff;

C. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for Plaintiff;

E.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F.  Declaratory judgment that Defendant NMAC violated the CCCRAA;

G.  Punitive damages of $5,000.00 for each violation pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);

H.  Actual damages, costs and reasonable attorneys' fees pursuant to Cal. Civ. Code §§ 1785.31(a)(2)(A) and 1785.31(a)(1);

I.  Punitive damages to be determined at trial, for the sake of example and punishing Defendants for their malicious conduct, pursuant to Cal. Civ. Code § 3294(a);

J.  Any pre-judgment and post-judgment interest as may be allowed under the law; and

K.  Any other relief that this Honorable Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

///

///

///

///

RESPECTFULLY SUBMITTED,

DATED: April 22, 2021

By: */s/ Youssef H. Hammoud*
Youssef H. Hammoud (SBN: 321934)
**PRICE LAW GROUP, APC**
6345 Balboa Blvd., Suite 247
Encino, CA 91316
T: (818) 600-5596
F: (818) 600-5496
E: youssef@pricelawgroup.com
*Attorneys for Plaintiff,*
*Mayra Aranda*