Youssef H. Hammoud (SBN: 321934)
Lauren Tegan Rodkey (SBN: 275830)
**PRICE LAW GROUP, APC**
6345 Balboa Blvd., Suite 247
Encino, CA 91316
T: (818) 600-5596
F: (818) 600-5496
E: youssef@pricelawgroup.com
E: tegan@pricelawgroup.com
*Attorneys for Plaintiff,*
*Mayra Aranda*

FILED
CLERK, U.S. DISTRICT COURT

JUNE 28, 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____YS_____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYRA ARANDA,<br><br>              Plaintiff,<br><br>v.<br><br>NISSAN MOTOR ACCEPTANCE CORPORATION,<br><br>              Defendant. | Case No. 2:21-cv-03451-CBM(PDx)<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. FAIR CREDIT REPORTING ACT, 15 USC § 1681 *et al.*<br>2. CCRAA, Cal. Civ. Code § 1785 *et seq.* |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Mayra Aranda ("Plaintiff" or "Mrs. Aranda") through her attorneys, alleges the following against Nissan Motor Acceptance Corporation ("NMAC").

# INTRODUCTION

1. Count I of Plaintiff's Complaint is based upon the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* The FCRA is a federal statute that broadly regulates the credit reporting agencies and furnishers of credit information. Among other things, the FCRA prohibits credit reporting agencies and furnishers from reporting incomplete or inaccurate information on a consumer's credit report.

2. Count II of Plaintiff's Complaint is based upon the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785 *et seq*, which regulates credit reporting agencies and furnishers of information from reporting incomplete or inaccurate information on a consumer's credit report.

3. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

# JURISDICTION AND VENUE

4. Jurisdiction of the court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681.

5. Supplemental jurisdiction arises under 28 U.S.C. § 1367. The state law claims are so related to the claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

7. Defendant transacts business here; therefore, personal jurisdiction is established.

## PARTIES

8. Plaintiff Mayra Aranda is natural person residing in California.

9. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c) and Cal. Civ. Code § 1785.3(b).

10. Defendant NMAC is a "person" as defined by Cal. Civ. Code. § 1785.3(j).

11. Defendant NMAC is a "furnisher of information" as contemplated by 15 U.S.C. § 1681s-2.

12. Defendant NMAC is a multinational automobile manufacturer that sells and leases vehicles to consumers throughout the world. NMAC can be served at its principal place of business located at 1 Nissan Way, Franklin, Tennessee 37067-6367.

13. Defendant acted through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

14. In or around 2007, Plaintiff entered into two (2) automobile lease contracts with Defendant NMAC.

15. Upon information and belief, the 2007 lease contracts were each thirty-nine (39) month leases.

16. In or around 2011, Plaintiff entered into another automobile lease contract with Defendant NMAC.

17. Upon information and belief, the 2011 lease contract was a thirty-nine (39) month lease.

18. Plaintiff does not owe any amount of money to Defendant NMAC with respect to the 2007 and 2011 lease contracts.

19. In or around April 2021, Plaintiff obtained her Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union"), and Equifax Information Services, LLC ("Equifax") (the "CRAs") credit reports.

20. Plaintiff learned that Experian was inaccurately reporting her Nissan-Infiniti LT accounts as:

a. Nissan-Infiniti LT Account (#290093XXXX), opened in July 2007, with a status as open and a balance of $5,940, and a comment stating "Full termination/balance owing."

b. Nissan-Infiniti LT Account (#290093XXXX), opened in August 2007, with a status as open and a balance of $10,763, and a comment stating "Full termination/balance owing."

c. Nissan-Infiniti LT Account (#290095XXXX), opened in January 2011, with a status as open and a balance of $9,019, and a comment stating "Full termination/balance owing."

21. Plaintiff learned that Trans Union was inaccurately reporting her Nissan-Infiniti LT accounts as:

    a. Nissan-Infiniti LT Account (#2900935XXXX), opened in July 2007, with a status as open and a balance of $5,940, and a comment stating "Full termination/balance owing."

    b. Nissan-Infiniti LT Account (#2900936XXXX), opened in August 2007, with a status as open and a balance of $10,763, and a comment stating "Full termination/balance owing."

    c. Nissan-Infiniti LT Account (#2900951XXXX), opened in January 2011, with a status as open and a balance of $9,019, and a comment stating "Full termination/balance owing."

22. The reporting by Trans Union shows that a balance began to report on all 3 accounts in October 2018, without ever decreasing or increasing since that time.

23. The reporting by Trans Union shows that there was a scheduled payment amount due each month on all 3 accounts from October 2018 until January 2021, that no amount was paid during those months and despite not making any of the alleged scheduled payments, there was no late payment history associated with the Accounts.

24. Plaintiff learned that Equifax was inaccurately reporting her Nissan-Infiniti LT accounts as:

   a. Nissan-Infiniti LT Account (#xxxxxx9261), opened in July 2007, with a status as open and a balance of $5,940, and a comment stating "Lease – full termination."

   b. Nissan-Infiniti LT Account (#xxxxxx4106), opened in August 2007, with a status as open and a balance of $10,763, and a comment stating "Lease – full termination."

   c. Nissan-Infiniti LT Account (#xxxxxx7100), opened in January 2011, with a status as open and a balance of $9,019, and a comment stating "Lease – full termination."

25. The reporting by the CRAs was inaccurate because Plaintiff does not owe a balance on the Lease accounts opened in 2007 and 2011.

26. Moreover, the CRAs were reporting that the lease was terminated, which indicates that they were aware the lease contract ended.

27. In addition, the CRAs were reporting that the Accounts were a 39-month term.

28. However, despite this information, CRAs continued to report a balance associated with the Accounts, many years after the expiration of the lease terms.

29. For the 2007 lease contracts, CRAs were reporting a date of last payment in February 2011.

30. For the 2011 lease contract, CRAs were reporting a date of last payment in August 2013.

31. The reporting by CRAs gives the impression that the Accounts are still open and that Plaintiff still has a balance on all three (3) automobile lease accounts despite the lease contracts being terminated many years ago and no balance is owed on the Accounts.

32. Upon information and belief, the balances associated with the automobile lease Accounts appeared on Plaintiff's credit reports sometime in 2018.

33. A cursory review of the reporting by CRAs would have alerted Defendant that the information being reported was inaccurate.

34. The information being reported by the CRAs was furnished by Defendant NMAC.

35. Defendant NMAC furnished information it knew or should have knew was inaccurate to the consumer credit reporting agencies.

36. Defendant NMAC was aware that Plaintiff's automobile leases were terminated and that she no longer owed any money on the accounts.

37. Despite this, Defendant NMAC furnished inaccurate information to the credit reporting agencies indicating that Plaintiff's accounts were still open and contained balances of $5,940.00, $9,019.00, and 10,763.00.

38. Defendant's inaccurate reporting of the Nissan-Infiniti LT accounts on Plaintiff's respective credit reports caused Plaintiff to suffer from a decreased credit score and credit worthiness.

39. The inaccurate reporting by Defendant is materially misleading because it signals to prospective credit lenders that Plaintiff is still liable for the balances on the automobile lease accounts.

40. The inaccurate reporting by Defendant caused Plaintiff to suffer from emotional distress and mental pain and anguish, including but not limited to, stress, anxiety, confusion, embarrassment and headaches.

41. In or around April 2021, Plaintiff submitted a mortgage application in the hopes of purchasing a new residence.

42. The inaccurate reporting of the Nissan-Infiniti LT Account's adversely affected Plaintiff's debt-to-income ratio.

43. Plaintiff's mortgage application was submitted through an automated pre-approval process.

44. Plaintiff was unable to receive the automated pre-approval because her debt-to-income ratio did not meet a certain standard.

45. The debt-to-income ratio measures all of Plaintiff's monthly debts relative to her monthly income.

46. A mortgage lender adds up all of a persons' debts, including auto loan/leases, and divides the sum by the persons' gross monthly income to get a percentage.

47. The inaccurate reporting by Defendant made it seem as though Plaintiff had monthly payments due on the 3 automobile lease accounts, thereby significantly impacting her debt-to-income ratio.

48. Upon information and belief, if Defendant was accurately reporting the Accounts, Plaintiff would have received an automated pre-approval.

49. Plaintiff has stopped her new home search because she cannot make any offer without a mortgage pre-approval.

50. The thought of not being able to finally own a home because of the inaccurate reporting has caused Plaintiff immense emotional distress and mental pain and anguish.

### *Plaintiff's Dispute*

51. On or about April 22, 2021, Plaintiff filed the instant lawsuit, notifying Experian that Plaintiff disputed the reporting of the Nissan-Infiniti LT accounts.

52. By virtue of being named in this lawsuit, NMAC was put on notice directly of Plaintiff's dispute of the inaccurate balance information.

53. On or about June 16, 2021, Experian forwarded notice of Plaintiff's dispute regarding the three (3) accounts at issue to NMAC via an automated consumer dispute verification ("ACDV") form.

54. Specifically, the dispute from Experian informed NMAC that Plaintiff claimed not to owe money on any of the reported leases, and asked NMAC to verify the account status, payment rating, and account history for the leases.

55. On June 23, 2021, NMAC responded to the ACDV, erroneously verifying the reported balance on the Nissan-Infiniti LT account (account number ending in 7100) as accurate.

56. NMAC reported that Plaintiff owed $9,019 when Plaintiff did not owe anything on this account.

57. This was inaccurate, as Plaintiff did not owe any money on this account.

58. Notably, NMAC correctly deleted the other two disputed accounts from Plaintiff's credit report. However, it inexplicably verified its inaccurate reporting of the Nissan-Infiniti LT account ending in 7011.

59. NMAC failed to conduct a reasonable investigation of the ACDVs it received from Experian.

60. NMAC failed to review all relevant information while investigating the ACDVs.

61. NMAC failed to correctly convey the results of its investigation to Experian, and the other credit reporting agencies.

62. NMAC verified its prior reporting as accurate despite possessing actual knowledge that its prior reporting was inaccurate.

63. NMAC verified its prior reporting as accurate despite being on notice of or having in its possession information showing that the reported balance on the disputed account was inaccurate.

64. Defendant's conduct was malicious and done with a willful and conscious disregard of the rights of the Plaintiff.

65. Defendant's conduct was negligent.

66. As a result of the above violations of the FCRA and the CCCRAA, Plaintiff suffered and continues to suffer injury to her feelings, stress, anxiety, mental anguish, embarrassment, humiliation, emotional distress, and negative impact to her credit, including a decreased credit score and credit worthiness.

67. Plaintiff was especially distressed and anxious after discovering that NMAC had failed to correct its reporting even after Plaintiff filed this lawsuit.

68. Defendants are liable to the Plaintiff for her actual damages, statutory damages, punitive damages and costs and attorney's fees.

## COUNT I
**Defendant Nissan Motors America Corporation**
**(Violations of the FCRA, 15 U.S.C. § 1681s-2(b))**

69. Plaintiff incorporates herein by reference all of the above paragraphs of this complaint as though fully set forth herein at length.

70. The FCRA requires a furnisher, such as NMAC, after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by that furnisher to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to

report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

71. Plaintiff notified Experian that the Nissan-Infiniti LT accounts were being reported inaccurately.

72. Thereafter, Experian notified NMAC that Plaintiff disputed the information NMAC had furnished, and further forwarded specific information about the nature of Plaintiff's dispute.

73. Plaintiff also informed NMAC directly about the inaccurate reporting on the accounts at issue.

74. NMAC knew that Plaintiff did not owe any money on the accounts at issue, yet it verified its reporting of a balance on the Nissan-Infiniti LT account ending in 7011 as accurate.

75. Defendant NMAC is liable under sections 1681n and 1681o of the FCRA by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(b):

    a. Willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

    b. Willfully and negligently failing to review all relevant information concerning the account at issue;

c. Willfully and negligently failing to report the inaccurate status of the inaccurate information to Experian

d. Willfully and negligently verifying the reporting as accurate even after NMAC determined that Plaintiff did not owe any money on any of the three accounts;

e. Willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

76. As a result of NMAC's misconduct, Plaintiff has suffered actual damages as described herein.

77. NMAC's misconduct was a direct and proximate cause of Plaintiff's damages.

78. NMAC is liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. §§ 1681n and 1681o.

## Count II
**Defendant Nissan Motors America Corporation**
**(Violations of the CCRAA, Cal. Civ. Code § 1785 *et seq.*)**

79. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

80. Defendant NMAC violated the CCCRAA. Defendant's violations include, but are not limited to, the following:

   a. Defendant NMAC violated Cal. Civ. Code § 1785.25 by furnishing information on a specific transaction or experience to a consumer credit reporting agency when Defendant knew or should have known that the information was inaccurate.

   b. Defendant NMAC knew or should have known that the Plaintiff's automobile lease accounts from 2007 and 2011 were closed and no longer had a balance.

   c. Defendant NMAC knew or should have known that the Plaintiff did not owe any money to Defendant NMAC and the accounts were closed many years ago.

   d. Each and every occasion where Defendant NMAC furnished inaccurate information about Plaintiff's Nissan-Infiniti LT accounts to a credit reporting agency is a separate violation under Cal. Civ. Code § 1785.31(2)(B);

81. Defendant NMAC 's acts, as described above, were done willfully and knowingly.

82. As a result of the foregoing violations of the CCCRAA, Defendant NMAC is liable to the Plaintiff for actual damages, statutory damages, punitive damages, and attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Mayra Aranda respectfully requests judgment to be entered against Defendant Nissan Motors America Corporation for the following:

A. Declaratory judgment that Defendant NMAC violated the FCRA and CCCRAA;

B. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A) for Plaintiff;

C. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for Plaintiff;

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Punitive damages of $5,000.00 for each violation pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);

G. Actual damages, costs and reasonable attorneys' fees pursuant to Cal. Civ. Code §§ 1785.31(a)(2)(A) and 1785.31(a)(1);

H. Punitive damages to be determined at trial, for the sake of example and punishing Defendant for its malicious conduct, pursuant to Cal. Civ. Code § 3294(a);

I. Any pre-judgment and post-judgment interest as may be allowed under the law; and

J. Any other relief that this Honorable Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

RESPECTFULLY SUBMITTED,

DATED: May 6, 2022

By: */s/ Youssef H. Hammoud*
Youssef H. Hammoud (SBN: 321934)
**PRICE LAW GROUP, APC**
6345 Balboa Blvd., Suite 247
Encino, CA 91316
T: (818) 600-5596
F: (818) 600-5496
E: youssef@pricelawgroup.com
*Attorneys for Plaintiff,*
*Mayra Aranda*