MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
ALISA A. GIVENTAL (State Bar No. 273551)
aag@severson.com
SEVERSON & WERSON
A Professional Corporation
595 Market Street, Suite 2600
San Francisco, California 94105
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
**NISSAN MOTOR ACCEPTANCE COMPANY LLC f/k/a NISSAN MOTOR ACCEPTANCE CORPORATION**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MAYRA ARANDA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>NISSAN MOTOR ACCEPTANCE CORPORATION; et al.,<br><br>　　　　Defendants. | Case No. 2:21-CV-03451<br><br>**REPLY MEMORANDUM IN SUPPORT OF NISSAN MOTOR ACCEPTANCE COMPANY'S SUMMARY JUDGMENT MOTION**<br><br>Date:　December 13, 2022<br>Time:　10:00 a.m.<br>Crtrm.:　8D<br>Judge:　Hon. Consuelo B. Marshall |

## Table of Contents

I. ARANDA'S CCRAA CLAIM IS TIME-BARRED ................................................. 1

    A.    Aranda Had Actual Or Constructive Knowledge Of The Alleged Violation More Than Two Years Before She Sued ............................... 1

    B.    Aranda's Husband's Knowledge Is Imputed To Her ............................ 3

    C.    The Continuous Accrual Doctrine Does Not Save Aranda's Claim .... 4

II. ARANDA HAS NOT ALLEGED A VIABLE FCRA CLAIM ............................ 6

III. CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bittick v. Experian Info. Sols. Inc.*,
    419 F. Supp. 2d 917 (N.D. Tex. 2006) .................................................................. 4

*Cohen v. Equifax Info. Servs., LLC*,
    No. 18-cv-6210, 2019 WL 5200759 (S.D. N.Y. Sept. 13, 2019),
    *aff'd*, 827 Fed. Appx. 14 (2d Cir. 2020) .............................................................. 8

*Ellis v. Advanta Bank*,
    No. 16-cv-06437, 2017 WL 1436249 (N.D. Cal. Apr. 24, 2017) ......................... 4

*Foster v. Arcata Assocs., Inc.*,
    772 F.2d 1453 (9th Cir.1985) ............................................................................. 2

*Hancock v. Charter One Mortg.*,
    No. 07-cv-15118, 2008 WL 2246042 (E.D. Mich. May 30, 2008) .................... 4

*Johnson v. Washingtoofn Metro. Area Transit Auth.*,
    883 F.2d 125 (D.C. Cir. 1989) ............................................................................ 2

*Kennedy v. Applause, Inc.*,
    90 F.3d 1477 (9th Cir. 1996) .............................................................................. 2

*Lovetro v. Steers*,
    234 Cal. App. 2d 461 (1965) .............................................................................. 3

*Mason v. BMW Fin. Servs., NA*,
    No. 14-cv-01357, 2014 WL 12591299 (C.D. Cal. Sept. 18, 2014) .................... 3

*Nelson v. Chase Manhattan Mortg. Corp.*,
    282 F.3d 1057 (9th Cir. 2002) ............................................................................ 9

*Roberts v. Lomanto*,
    112 Cal. App. 4th 1553 (2003) ........................................................................... 4

*Roybal v. Equifax*,
    405 F. Supp. 2d 1177 (E.D. Cal. 2005) ........................................................... 6, 8

## TABLE OF AUTHORITIES

*Page(s)*

*Ryman v. Sears, Roebuck & Co.*,
  505 F.3d 993 (9th Cir. 2007) ................................................................................ 4

*Sung Gon Kang v. Credit Bureau Connection, Inc.*,
  No. 1:18-cv-01359, 2019 WL 1259444 (E.D. Cal. Mar. 19, 2019) ..................... 5

*Turner v. Experian Info. Servs., Inc.*,
  No. 3:16-cv-630, 2017 WL 2832738 (N.D. Ohio June 30, 2017) ....................... 7

*Warner v. Experian Info. Sols., Inc.*,
  931 F.3d 917 (9th Cir. 2019) ........................................................................... 7, 8

**Statutes**

15 U.S.C. § 1681i ...................................................................................................... 6, 8

15 U.S.C. § 1681i(a)(1)(A) ........................................................................................ 6, 8

15 U.S.C. § 1681i(a)(1)(A)'s ........................................................................................ 7

15 U.S.C. § 1681s-2(b) ..................................................................................... 4, 6, 8, 9

15 U.S.C. § 1681s-2(b)(1) ............................................................................................ 8

Civ. Code, §§ 1785.16, 1785.25(c), (f) ......................................................................... 5

Civ. Code, § 1785.26(b), (c) ......................................................................................... 5

Civ. Code, § 1785.33 ........................................................................................... 1, 4, 5

Civil Code § 1785.25(a) ...................................................................................... 4, 5, 6

# I.

# ARANDA'S CCRAA CLAIM IS TIME-BARRED

**A.  Aranda Had Actual Or Constructive Knowledge
Of The Alleged Violation More Than Two Years Before She Sued**

In its initial moving papers, NMAC submitted evidence showing Aranda has closely monitored her credit for years. Aranda tries to dispute some of this evidence on hypertechnical or even incorrect grounds in her Statement of Genuine Disputes of Material Fact ("SGD"), in an effort to raise doubt as to how closely she paid attention to her credit.[1]

However, NMAC's evidence established that Aranda used her Credit Karma account to dispute various tradelines appearing on her credit report and that, in June 2017, the same Credit Karma account was used to open a dispute as to one of the three Nissan lease accounts at issue here. Dkt #103, pp. 6-7. Aranda's opposition fails to raise a genuine issue of fact on this point for three reasons.

First, and most importantly, Aranda's declaration addresses only her actual knowledge. But constructive knowledge starts the limitations period running. Civ. Code, § 1785.33. Aranda offers no evidence to show that a reasonable consumer who had ready access to her credit information through a Credit Karma account, knew adverse information was "populating on [her] credit report," Dkt #113-3, ¶ 5, and disputed several tradelines, as Aranda now admits, *id.*, ¶ 13, was not on inquiry notice of inaccurate information contained in other tradelines.

Second, while Aranda declares that *she* never looked at NMAC's tradelines on Credit Karma, *id.*, ¶ 14, she has submitted no evidence disputing that Sergio was

---

[1]  For example, she argues the IP addresses used to log on to her Credit Karma account have not been tied to her or her husband, and that Credit Karma did not display her accounts in "exactly the same way" as they were in her printed credit reports. Such sleights of hand do not create *material* disputes of fact for the reasons explained in NMAC's Reply to her Statement of Genuine Disputes of Material Fact or "RSGD."

aware of the alleged inaccuracies and submitted the June 2017 dispute of her NMAC lease account. And, as shown in the following section, Sergio's knowledge is properly imputed to Aranda.

Third, her declaration raises no genuine issue because it is "uncorroborated and self-serving," *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996), and contradicts her own prior sworn testimony as well as other undisputed evidence, *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1462 (9th Cir.1985); *Johnson v. Washington Metro. Area Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989).

In her latest declaration, Aranda now recalls disputing one or more "adverse" tradelines through Credit Karma, and she now acknowledges that she knew adverse information was populating her credit report. Dkt #113-3, ¶¶ 5, 13. These admissions contradict her sworn deposition testimony that she did not look at her credit report "at all" from August 2013 through April 2021. Dkt #75-1, 53:15-21.[2] They also contradict her position taken in response to this summary judgment motion, that she used the Credit Karma app. "[j]ust to check my credit score." SGD and RSGD, No. 11 (citing Mayra Aranda 7/20/22 Depo., 62:21-24).

Aranda's denial that she saw NMAC's tradelines is also disproven by the irrefutable evidence that an NMAC tradeline was disputed in June 2017 using her Credit Karma account. Aranda offers no explanation of how the dispute was opened on that account without her or Sergio's knowledge.[3] And, there is no evidence to

---

[2] The Court granted NMAC's motion to reopen discovery to explore this and other inconsistencies in Plaintiff's testimony. Dkt #80.

[3] Aranda's attempts to raise doubt about the June 2017 dispute all fall flat. That dispute was opened at the same time as one of her log-ons, *not* an hour earlier, as she claims. RSGD, No. 30; see NMAC's RJN. NMAC's tradelines were indisputably included in her credit report and were, at the time of the dispute, being designated as "adverse" by Trans Union. RSGD, Nos. 26, 27. And there is no evidence to support the suggestion that Aranda was disputing some other Nissan Infiniti lease account (she had none) rather than one of the three accounts at issue. RSGD, Nos. 29-30.

support her nonsensical suggestion that a tradeline can be disputed as inaccurate without the customer actually reviewing it. SGD, No. 16. Rather, the uncontroverted evidence in the record on this motion is that a Credit Karma user must open a particular tradeline in order to submit a dispute. NMAC's Statement of Uncontroverted Facts, Nos. 14-16.

Thus, there is no genuine dispute of fact but that Aranda "should have known" of the supposedly inaccurate information being reported by NMAC more than two years before she filed this suit.

**B. Aranda's Husband's Knowledge Is Imputed To Her**

Contrary to Aranda's argument, Opp., 18:21-19:16, the undisputed evidence proves that Aranda's husband, Sergio, acted as her agent with respect to financial matters, including reviewing her credit reports.

Although "an agency cannot be implied from the marriage relation alone," "much less evidence is required to establish a principal and agent relationship between husband and wife than between nonspouses." *Lovetro v. Steers*, 234 Cal. App. 2d 461, 475 (1965). Here, Aranda admits that Sergio "handles the finances for our family, including applying for credit and/or loans," and has permission to use my information when he deems it is in the best interests of our family," submit Aranda's credit information to lenders, and pull Aranda's credit reports. Opening Memo., 8:6-9:5 (*quoting* Dkt. 90, ¶3; Mayra Aranda Depo., Vol. 2, 23:23-24:24; 27:5-15).

"[G]iven the lower quantum of evidence required to establish an agency relationship between spouses," Aranda's quoted testimony is more than sufficient to establish that Sergio acted as her agent. *Mason v. BMW Fin. Servs., NA*, No. 14-cv-01357, 2014 WL 12591299, at *5 (C.D. Cal. Sept. 18, 2014); *Lovetro,* 234 Cal. App. 2d at 477. Aranda's opposition does not dispute that testimony or address any of the legal authorities cited in NMAC's motion. Instead, she claims only that she must give her consent before any "final" decisions are made about financial matters.

1  Opp., 18:21-26; Aranda Decl., ¶ 16.  That fact does not disprove Sergio's status as
2  her agent.  Real estate brokers act as agents of home buyers and sellers even though
3  the buyers and sellers make the final decision on a purchase or sale.  *Roberts v.*
4  *Lomanto*, 112 Cal. App. 4th 1553, 1563 (2003).

5  **C.    The Continuous Accrual Doctrine Does Not Save Aranda's Claim**

6  To escape the conclusion that her CCRAA claim is time-barred, Aranda tries
7  to invoke the continuing (or separate) accrual doctrine, arguing that each instance of
8  furnishing should be viewed as a separate violation.  Opp., 12:5-14:11 (*citing Aryeh*
9  *v. Canon Bus. Sols., Inc*., 55 Cal. 4th 1185, 1192, 1199 (2013)).

10  Aranda cites no authority applying the separate accrual doctrine to a claim
11  that the defendant has furnished inaccurate information in violation of Civil Code
12  § 1785.25(a).  Instead, she cites cases holding that each and every failure by a
13  furnisher to reinvestigate a new consumer dispute, as required by 15 U.S.C. §
14  1681s-2(b), triggers a new, separately accruing limitations period.  Opp., 13:7-26.
15  As Aranda acknowledges, however, several decisions have reached the opposite
16  conclusion, holding that a consumer cannot evade the statute of limitations simply
17  by re-submitting a notice of dispute the furnisher has previously investigated.  See,
18  e.g., *Ellis v. Advanta Bank*, No. 16-cv-06437, 2017 WL 1436249, at *3 (N.D. Cal.
19  Apr. 24, 2017); *Hancock v. Charter One Mortg.*, No. 07-cv-15118, 2008 WL
20  2246042, at *2 (E.D. Mich. May 30, 2008); *Bittick v. Experian Info. Sols. Inc*., 419
21  F. Supp. 2d 917, 918-19 (N.D. Tex. 2006).

22  These conflicting federal decisions provide little, if any, guidance on making
23  an "*Erie* guess" as to how the California Supreme Court would interpret the
24  CCRAA's limitations provision, Civil Code § 1785.33, in the context of the very
25  different type of violation she alleges under Civil Code § 1785.25(a).  *See Ryman v.*
26  *Sears, Roebuck & Co.,* 505 F.3d 993, 995 & n. 1 (9th Cir. 2007).

27  There are at least two strong reasons for concluding that the California Su-
28  preme Court would not apply the continuing or separate accrual doctrine in this cir-

cumstance. First, the separate accrual doctrine conflicts with § 1785.33's wording. Under that section, the two-year limitations period runs not from a violation—such as furnishing inaccurate information—but from the date the "plaintiff knew of, *or should have known of*, the violation."[4] Even if § 1785.25(a) creates a recurring obligation, as Aranda contends, Opp., 13:1-6, under § 1785.33's wording, the limitations period does not run from each breach of that obligation, but from the date the plaintiff knew or should have known of a violation. Once actual or constructive knowledge is gained, it applies equally to each re-furnishing of the same allegedly inaccurate data.

Second, application of the continuing or separate accrual doctrine to claims for alleged violation of § 1785.25(a) would thwart the CCRAA's purpose of ensuring that CRAs "report accurate information, thereby protecting consumers from the transmission of inaccurate credit information." *Sung Gon Kang v. Credit Bureau Connection, Inc.*, No. 1:18-cv-01359, 2019 WL 1259444, at *4 (E.D. Cal. Mar. 19, 2019). To that end, the CCRAA provided for prompt notice and correction of inaccurate information. It required furnishers to notify consumers when they submitted negative information. Civ. Code, § 1785.26(b), (c).[5] The notice allowed consumers to promptly discover and dispute any inaccurate information, protecting against transmission of that data. Civ. Code, §§ 1785.16, 1785.25(c), (f). The notice also put consumers on inquiry notice of any inaccuracy of the submitted information, commencing the limitations period under § 1785.33 and thus encouraging consumers to take prompt corrective action.

---

[4] Similarly, the same section's seven-year statute of repose runs not from each of successive re-furnishings of the same inaccurate information, but "from the earliest date on which liability could have arisen." Civ. Code, § 1785.33.

[5] The CCRAA's limitations section is properly construed in the context of all the act's provisions even though many were later preempted by the FCRA.

Applying the continuing or separate accrual doctrine to a claim under § 1785.25(a) would thwart this statutory scheme by allowing, indeed encouraging, consumers to delay, rather than promptly dispute and prevent transmission of, inaccurate information. Without timely notice of the dispute, the furnisher will likely continue submitting the same allegedly inaccurate information, possibly causing additional actual damage and incurring further liability.

The California Legislature was surely well aware that furnishers submit data on a monthly basis. There is no reason to think it meant to encourage consumers to indefinitely delay any effort to correct inaccurate credit information.

## II.

## ARANDA HAS NOT ALLEGED A VIABLE FCRA CLAIM

The Court should also grant NMAC summary judgment on Aranda's FCRA claim because Aranda's original complaint in this action was not a notice of dispute under 15 U.S.C. § 1681i(a)(1)(A) and did not trigger any duty 15 U.S.C. § 1681s-2(b) for NMAC to reinvestigate the information it furnished Experian.

"[A] private right of action against a furnisher of credit information exists only if the disputatious consumer notifies the CRAs in the first instance." *Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1179-80 (E.D. Cal. 2005); Opp., 19:20-20:6. Aranda cannot prove that necessary element of her FCRA claim against NMAC.

Aranda cites no authority supporting her contention that she gave the necessary notice of dispute by serving her complaint in this action. That no court has ever accepted her notion is telling. Thousands of FCRA complaints are filed each year against furnishers and CRAs. Yet Aranda has not found a single decision holding (or even a secondary source suggesting) that such a complaint constitutes notice of a dispute, triggering a CRA's duty under 15 U.S.C. § 1681i or a furnisher's duty under 15 U.S.C. § 1681s-2(b).

Instead, Aranda merely tries to distinguish NMAC's three cases on their facts. Opp., 20:20-24:24. That effort is as misguided as it is unsuccessful. It is Aranda's

burden to establish that her complaint could legally serve as a notice of dispute that is required to trigger a furnisher's duty to reinvestigate. Distinguishing contrary authority does not satisfy that affirmative burden.

Moreover, Aranda's factual distinctions fail because the reasoning of these cases easily extends to the slightly different facts of this case. In *Warner v. Experian Info. Sols., Inc.*, 931 F.3d 917, 921 (9th Cir. 2019), for example, the Ninth Circuit's rationale turned on 15 U.S.C. § 1681i(a)(1)(A)'s words triggering a duty to reinvestigate only when "*the consumer notifies the agency directly ...* of such dispute." (Emphasis in opinion). Interpreting the emphasized words, the court held:

> This appeal can be resolved by considering the unambiguous meaning of the word "directly." The most pertinent definition of directly is "without any intervening agency or instrumentality or determining influence." That definition demonstrates that to notify a consumer reporting agency of a dispute "directly," a letter must come from the consumer and be sent to the agency.

*Id.* (citations omitted).

The Ninth Circuit's interpretation of the statutory language clearly extends well beyond the *Warner* case's particular facts, even if the Ninth Circuit carefully limited its holding "to the facts before us." "Directly" does not change its meaning depending on the facts of each case.

The complaint in this case plainly did not "come from the consumer" *directly*. It was signed and served by Aranda's lawyers, just as Warner's letter was signed and sent by his credit repair service. That Aranda asserts that she, "with the help of [her] attorneys drafted, reviewed and approved the Complaint … prior to its filing," Aranda Decl., Dkt. 113-3, ¶ 20, is not enough to distinguish *Warner*. Not only does Aranda carefully avoid saying what she did herself, but the assertion does not change the fact that Aranda did not notify Experian "directly" but only through her attorneys' initiating litigation. *See Turner v. Experian Info. Servs., Inc.*, No. 3:16-cv-630, 2017 WL 2832738, at *8 (N.D. Ohio June 30, 2017) (concluding that consumer did not directly notify agency of dispute submitted by credit repair

organization, where consumer "did not draft the dispute letter, provide documentation supporting its claims, review its accuracy, sign it, or mail it"); *Cohen v. Equifax Info. Servs., LLC*, No. 18-cv-6210, 2019 WL 5200759, at *4 (S.D. N.Y. Sept. 13, 2019), *aff'd*, 827 Fed. Appx. 14, 18 (2d Cir. 2020) (same).

Nor does it matter that the complaint was prepared and sent by Aranda's attorneys rather than a credit repair service. Such a service is just as much the consumer's agent as an attorney is. Section 1681i does not distinguish between types of agents. It simply requires the consumer to notify the CRA "directly." If an agent's letter is not sent "directly" by the consumer, as *Warner* held, neither is a complaint served by a different type of agent.

Aranda's effort to distinguish *Roybal*, 405 F. Supp. 2d 1177 also fails. Aranda does not dispute *Roybal's* holding that an FCRA claim against a furnisher requires proof of both (1) that the consumer directly notified the CRA of a dispute *and* (2) that the CRA then notified the furnisher of the dispute. *Roybal*, 405 F. Supp. 2d at 1179-1180. That Aranda's claim fails on the first of these two required steps while Roybal's failed on the second does not detract from *Roybal's* holding that both steps are required.[6]

The evidence on this motion shows that Aranda knows how to provide direct notice of a dispute to the CRAs when she wants to. She now admits she used her Credit Karma app to dispute "one or more" accounts she believed were inaccurate,

---

[6] It is undisputed that Experian sent NMAC an ACDV after being served with Aranda's complaint. *See* Opp., 22:17-23:6. But to trigger NMAC's reinvestigation duty under 15 U.S.C. § 1681s-2(b), Aranda must show that the ACDV was sent "pursuant to section 1681i(a)(2)." 15 U.S.C. § 1681s-2(b)(1). The ACDV was sent pursuant to that section only if given in response to a consumer's direct notice of a dispute under 15 U.S.C. § 1681i(a)(1)(A). So, the fact that Aranda can satisfy the second step of the procedure does not relieve her of the necessity of also satisfying the first step—that she gave direct notice to a CRA.

Aranda Decl., Dkt. 113-3, ¶ 13, and the evidence shows those disputes were resolved by the deletion of those accounts from her credit report. RSGD, No. 20.

Last, trying to avoid *Nelson v. Chase Manhattan Mortg. Corp.,* 282 F.3d 1057 (9th Cir. 2002)'s explication of section 1681s-2(b)'s purpose, Aranda constructs and refutes a strawman argument; namely, that the section does not "provide immunity to a furnisher of information from any post-lawsuit violations of the law." Opp., 24:16-25, 25:16-22.  NMAC never claimed any such post-suit immunity from FCRA duties.  Rather, NMAC has consistently maintained only that a lawyer-crafted court pleading, such as a complaint, is not a consumer's direct notice of a dispute that starts the reinvestigation process.[7] Opening Memo., 17:20-18:14.

And *Nelson* shows convincingly why that is so.  As the Ninth Circuit explained in *Nelson*, Congress did not intend to expose furnishers to suit by every consumer dissatisfied with the furnished credit information, but instead "provide[d] a filtering mechanism in § 1681s-2(b) [which begins] by making the disputatious consumer notify a CRA" of a dispute.  *Nelson,* 282 F.3d at 1060.

Treating a complaint as a notice of dispute does not serve these statutory purposes.  A furnisher's exposure to suit cannot be limited after litigation has already commenced.  Nor can the notice of dispute procedure "filter" disputes at that point. Once a complaint is filed and served, the court or a jury must assume the burden of deciding which disputes are meritorious.

Indeed, treating court pleadings as consumer notices of dispute would thwart Congress' goals.  Instead, of limiting furnishers' liability, the dispute process would then serve only to increase furnishers' potential exposure, requiring them to conduct needless reinvestigations—or risk additional exposure to actual and statutory damages—each time a court paper or oral proceeding stated or restated the consumer's

---

[7] If Aranda directly sent Experian a notice of dispute, even after filing suit, she could have triggered the reinvestigation process.  But she did not do so simply by suing.

claim the furnished information was inaccurate. Here, Aranda claims her initial complaint was a notice of dispute triggering the reinvestigation procedure under sections 1681i(a) and 1681s-2(b). But if accepted, Aranda's legal argument would apply as well to an amended complaint making the same claim, to a request for admission of the inaccuracy of the furnished information, to a summary judgment motion, like Aranda's in this case, to oral argument on a motion to dismiss or for summary judgment, and even to a plaintiff's deposition testimony. Instead of limiting a furnisher's exposure, the statutory filtering process would, under Aranda's erroneous interpretation, serve only as a means of requiring pointless repetitive reinvestigations of the same already-litigated dispute while exposing the CRA and furnisher to multiple additional statutory penalties.

Thus, contrary to Aranda's contention, her complaint was not a notice of dispute. It did not trigger the reinvestigation process. So, she cannot prove her FCRA claim against NMAC, and it is entitled to summary judgment on that claim.

## III.
## CONCLUSION

For the reasons stated above and in NMAC's opening memorandum, the Court should grant NMAC summary judgment against Aranda.

DATED: November 29, 2022

SEVERSON & WERSON
A Professional Corporation

By: /s/ Mark D. Lonergan
MARK D. LONERGAN

Attorneys for Defendant NISSAN MOTOR ACCEPTANCE COMPANY LLC f/k/a NISSAN MOTOR ACCEPTANCE CORPORATION

# PROOF OF SERVICE

**Mayra Aranda v. Nissan Motor Acceptance Company LLC**
**Case No. 2:21-cv-03451**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is 595 Market Street, Suite 2600, San Francisco, CA 94105.

On November 29, 2022, I served true copies of the following document(s):

**REPLY MEMORANDUM IN SUPPORT OF NISSAN MOTOR ACCEPTANCE COMPANY'S SUMMARY JUDGMENT MOTION**

on the interested parties in this action as follows:

| | |
|---|---|
| L. Tegan Rodkey<br>Price Law Group APC<br>6345 Balboa Boulevard Suite 247<br>Encino, CA 91316<br>Tel: 818-600-5526<br>Fax: 818-600-5426<br>Email: tegan@pricelawgroup.com | Attorneys for Plaintiff<br>MAYRA ARANDA |
| Youssef H. Hammoud, Esq.<br>Price Law Group, APC<br>6345 Balboa Blvd., Suite 247<br>Encino, CA 91316<br>Tel: (818) 600-5596<br>Fax: (818) 600-5596<br>Email: Youssef@pricelawgroup.com<br>roxanne@pricelawgroup.com | |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 29, 2022, at San Francisco, California.

                                           /s/ Katrina D. Adkins
                                           Katrina D. Adkins