David A. Chami (AZ: 027585)
(Admitted *pro hac vice*)
**PRICE LAW GROUP, APC**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5515
F: (818) 600-5515
E: david@pricelawgroup.com

Youssef H. Hammoud (SBN: 321934)
Lauren Tegan Rodkey (SBN: 275830)
**PRICE LAW GROUP, APC**
6345 Balboa Blvd., Suite 247
Encino, CA 91316
T: (818) 600-5596
F: (818) 600-5596
E: youssef@pricelawgroup.com
E: tegan@pricelawgroup.com
*Attorneys for Plaintiff,*
*Mayra Aranda*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYRA ARANDA,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN MOTOR ACCEPTANCE CORPORATION,<br><br>Defendant. | Case No. 2:21-cv-03451-CBM-PD<br><br>**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE REFERENCE TO ANY POST HOC EXPLANATIONS AS TO WHY DEFENDANT'S RELEVANT CREDIT REPORTING POLICY WAS ORIGINALLY IMPLEMENTED INCLUDING ANY TESTIMONY FROM DEFENDANT'S CORPORATE REPRESENTATIVE REGARDING ANY SUCH EXPLANATION AND ANY REFERENCE OR MENTION** |

i

**OF N.Y. Pers. Prop. Law § 343(4)(c) OR ANY OTHER STATE LAW and INCORPORATED MEMORANDUM**

Date: March 14, 2023
Time: 2:30 pm
Location: Courtroom 8D or 9B
First Street Courthouse
350 West First Street
Los Angeles, California 90012

Before the Honorable Consuelo B. Marshal

**To the Court, Defendant and their attorneys of record:**

PLEASE TAKE NOTICE that on March 14, 2023 at 2:30 p.m., at the Final Pretrial Conference, this matter shall be heard before the Honorable Consuelo B. Marshall, District Court Judge for the Central District of California, in Courtroom 8D or 9B of the First Street Courthouse located at 350 West First Street, Los Angeles, California 90012, Plaintiff Mayra Aranda ("Aranda") hereby moves the Court, in limine, for an order excluding any post hoc explanations as to why Defendant's relevant consumer credit reporting policy was originally implemented, and specifically excluding (1) any testimony from Defendant's corporate representative regarding any such explanation, and (2) any reference or mention of N.Y. Pers. Prop. Law § 343(4)(c) or any other state law to suggest or otherwise hint that Defendant's credit reporting policy was implemented to comply with, or is reasonable under, such laws.

ii

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 25, 2023.

## TABLE OF CONTENTS

I.   ARGUMENT ....................................................................................................1

A. Any explanation as to the reason for the change in policy is unsupportable by the record or admissible evidence ............................. 5

B. Allowing baseless arguments or reference to the attorney-fabricated, post hoc explanation would be extremely prejudicial...........8

C. The Court should preclude any discussion of or citation to any state law statute as somehow relevant to Defendant's policy change decision.......................................................................................................9

   i.   The New York law is not relevant to Plaintiff's claims against Nissan or Nissan's defenses ................................................................10

D. Allowing reference to the New York law, or any other similar state laws, would result in prejudice, confusion and waste of time ................11

II.  CONCLUSION...............................................................................................12

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*21st Century Fin. Servs., LLC v. Manchester Fin. Bank*,
255 F. Supp. 3d 1012 (S.D. Cal. 2017)......................................................................5

*Bess v. Cate*,
422 F. App'x 569 (9th Cir. 2011) ..............................................................................7

*Daniel F. v. Blue Shield of California*,
305 F.R.D. 115 (N.D. Cal. 2014) ..............................................................................5

*Goodman v. Staples the Office Super-Store, LLC*,
644 F.3d 817, 827 (9th Cir.   011)............................................................................7

*Kaur v. Ashcroft*,
95 F. App'x 879 (9th Cir. 2004) ...............................................................................8

*Lopez-Reyes v. INS*,
79 F.3d 908 (9th Cir.1996)........................................................................................8

*Ormco Corp. v. Align Technology, Inc.*,
647 F. Supp. 2d 1200 n.1 (C.D. Cal. 2009) .............................................................5

*Singh v. INS*,
292 F.3d 1017 (9th Cir.2002).....................................................................................8

*Tomac, Inc. v. Coca-Cola Co.*,
418 F. Supp. 359 (C.D. Cal. 1976) ...........................................................................8

**Statutes**

N.Y. Pers. Prop. Law § 343(4)(c) ............................................................................ 12

**Rules**

Fed. R. Evid. 401 ............................................................................................... 10, 11

Fed. R. Evid. 403 ...................................................................................................8, 11

Fed. R. Evid. 801 – 804 ............................................................................................6

## I.    <u>ARGUMENT</u>

The claims against Defendant arise from its furnishing of inaccurate information regarding three automobile leases to the three credit reporting agencies on a monthly basis. The three accounts at issue each had alleged past due balances that were reported as charged off at some time prior to 2016. However, in either 2012 or 2016 (depending upon which 30(b)(6) witness is asked), Defendant implemented a new policy wherein it ceased reporting lease terminated accounts with a charged-off status. As such, Defendant began to report that each of the three accounts were open, current, being paid as agreed, with a balance and a scheduled monthly payment.

Throughout the **entirety** of this case, beginning in April 2021, and despite **multiple** relevant discovery requests (both written and during deposition testimony), Defendant has staunchly and repeatedly represented to Plaintiff and her counsel that it does not know why this consumer credit reporting policy change was implemented. The basic reason for this position of ignorance is the assertion that the individuals responsible for the new policy's implementation no longer work for Defendant. *See Doc. 112-3, Declaration of Deborah Donley*, ¶26-28, 32. Further, this policy, that presumably affects thousands if not hundreds of thousands of consumer accounts is not referenced in any manner whatsoever by any of the policy documents generated and produced by Defendant. Stated differently, there is absolutely **no documentary record** of this policy's creation, or the reason therefore, implemented by one of the world's largest automotive manufacturers.

Moreover, when both of Defendant's 30(b)(6) witnesses were questioned about the credit reporting policy, they could not explain the reasoning behind the policy,

1

why it was implemented, what factors were considered, or anything else, other than how the policy affected lease terminated accounts. In fact, they did not even agree on when the policy was implemented. The **sole** point of procedural agreement between the two witnesses was that neither knew the reason for the change, and neither could identify a single person who would know the reason for the change:

> Q.    So for the last approximately nine years she [Plaintiff] hasn't made a payment on this nine-thousand-dollar balance, but she's still in good standing with Nissan?
>
> A.    Correct.
>
> Q.    And why is it that she is still allegedly in good standing?
>
> MR. IM:    Objection. Argumentative.
>
> THE DEPONENT:    Nissan's policy on lease-terminated accounts are not to report them negatively. So the consumer will stay in a paid-as-agreed status through the duration of the liability period.
>
> […]
>
> Q.    Why is it that Nissan doesn't report the – negatively?
>
> **A.    It was a business decision that was done back in 2012 with upper management, so I can't answer that.** It was before I came down here to the credit bureau team.

*See* doc. 102-04, (Transcript of April 22, 2022, Rule 30(b)(6) Deposition of Deborah Donley) ("Donley Depo"), PAGE ID #1091-#1092, 63:1-64:4 (emphasis added). A few months later when Nissan produced a 30(b)(6) witness on the same topic the exchange sounded all too familiar.

2

Q.    Okay. And you've told me that at the time the policy would have been to show this account closed, there's a balance owing, charged-off status; correct?

A.    Yes.

Q.    Has that policy since changed, since 2012?

A.    Yes.

Q.    Okay. When did it change?

A.    I believe the date that Deborah Donley confirmed was in 2016

Q.    Okay. And what was the change?

A.    To change the reporting to closed with an outstanding balance, without the charge-off designation.

**Q.    Do you know why this policy changed in 2016?**

**A.    I don't.**

**Q.    Do you know who made the policy decision to change the policy in 2016?**

**A.    I don't.**

*See* doc. 102-08, (Transcript of July 18, 2022, Rule 30(b)(6) Deposition of Keith Wieber) ("Wieber Depo"), PAGE ID #1329-#1330, 49:19-50:10 (emphasis added).

Moreover, until recently it was Defendant's sworn testimony that discussion of the policy change decision had not come up since 2014:

Q.    Do you know what the policy was prior to that, prior to the business decision in 2012?

A.    I do not know.

3

Q.     Okay. How were you told about the business decision when you -- when you started at -- when you came into the credit bureau management team?

A.     I asked about it, and then I was told.

Q.     Why did you ask about it?

A.     Because I had an account come up that I wanted to verify.

[…]

Q.     Okay. Have you ever talked to anybody about the -- about that policy since you first heard about it?

MR. IM:     Objection. Vague and ambiguous.

THE DEPONENT:     It has come up in 2014.

[…]

Q.     Okay. **Did it come up again since 2014?**

**A.     No.**

Donley Depo., PAGE ID #1181, 153:6-15; PAGE ID #1182, 154:9-13; PAGE ID #1183, 155:14-15 (emphasis added).

It was not until Plaintiff filed her motion for partial summary judgment that Defendant invented the post hoc explanation that the policy change was implemented "to benefit customers", relying upon the same in opposition to summary judgment. *See* doc. 112-2 (Defendant's Statement of Genuine Disputes in Opposition to Plaintiff's MSJ), PAGE ID #2583, ¶ 35. As this novel assertion lacked any evidentiary support on the record whatsoever, Defendant and its counsel sought to alter the record, well after the close of discovery, by proffering an obviously

4

attorney-crafted declaration, signed by Ms. Donley. Therein, Ms. Donley affirmed that, while she could not "confirm what factors the company considered" when making the policy change, "[i]n all of the discussions [she] [has] had with other NMAC employees who are part of the Credit Bureau Management team, it has always been discussed and assumed that this was a policy that benefits NMAC customers." *See d*oc. 112-3 ("Donley Decl."), PAGE ID #2634, ¶ 32.

Additionally, Defendant's counsel sought to construct a venire of credibility and reasonableness for this "water cooler gossip" source for the post-hoc explanation by spoon-feeding an obviously later-concocted legal reason for the change, purportedly arising under New York state law, to Defendant's expert witness.

For the reasons set forth below, neither of these patent attempt to "retcon" the evidentiary record just prior to trial should be allowed.

### A. Any explanation as to the reason for the change in policy is unsupportable by the record or admissible evidence

Districts in the Ninth Circuit, including this Court, routinely and consistently disregard arguments and factual assertions which are not supported by the record when determining admissibility at the summary judgment stage. *See e.g. Daniel F. v. Blue Shield of California*, 305 F.R.D. 115, 122-23 (N.D. Cal. 2014) ("The court does not consider any arguments based on factual assertions that are unsupported by evidence."); *21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, 255 F. Supp. 3d 1012, 1027 (S.D. Cal. 2017) ("Courts do not consider arguments based on factual assertions that are not supported by the record."); *Ormco Corp. v. Align Technology, Inc.*, 647 F. Supp. 2d 1200, 1202 n.1 (C.D. Cal. 2009) ("The Court does not consider contentions by Align that are not supported by the record.").

Despite a year of open discovery, Defendant failed to produce a **single** document supportive of its novel explanation for the policy change which took place a decade ago. Moreover, as described above, until after the close of discovery it was Defendant's position, emphasized by two separate Rule 30(b)(6) witnesses, that Defendant **does not know** why the policy was changed. It was not until after Plaintiff's partial summary judgment motion was filed that Defendant produced a declaration by Ms. Donley that included, for the first time, reference to "water-cooler" discussions between herself and other members of Defendant's credit reporting team where it was assumed that the change was made to benefit Defendant's consumers. This, despite Ms. Donley previously testifying under oath that the topic had not come up since 2014.

Ms. Donley's novel testimony is inadmissible on its face. First, Ms. Donley's declaration explicitly couched her testimony about Defendant's view of the 2016 policy change as being acquired through "discussions [Ms. Donley has] had with other NMAC employees who are part of the Credit Bureau Management team." *See* Donley Decl., PAGE ID #2634, ¶ 32. Because these discussions are not on the record, and because the unidentified employees who were allegedly involved in these discussions are not testifying, anything that these employees may or may not have said would be classic hearsay, for which no exception or exclusion applies. *See generally* Fed. R. Evid. 801 – 804.

Second, the hearsay statements relied upon by Ms. Donley in paragraph 32 of the Donley Decl. were purportedly made to Ms. Donley by other employees of Defendant. However, Defendant failed to disclose the identity of such employees with this important knowledge as required by Rule 26's express command that

6

litigants provide (without being asked by the opposing party), "the name and, if known, the address and telephone number of each individual likely to have discoverable information-along with the subjects of that information-that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment…" Fed. R. Civ. P. 26(a)(1)(A)(i). Ms. Donley's declaration incorporates, and explicitly relies upon, statements made by "other NMAC employees" regarding Defendant's knowledge and belief as to the purpose and effect of the 2016 policy. These employees were never disclosed to Plaintiff, despite Defendant having over a year to do so. Rule 37's automatic exclusion sanction therefore applies and prohibits Defendant's reliance on any statements made by these undisclosed (and completely unidentified) employees. *See Goodman v. Staples the Office Super-Store, LLC,* 644 F.3d 817, 827 (9th Cir. 2011) ("Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed.") ("Rule 37(c)(1) is a self-executing, automatic sanction designed to provide a strong inducement for disclosure."); *Bess v. Cate*, 422 F. App'x 569, 572 (9th Cir. 2011) (approving of a trial court's exclusion of information not disclosed prior to summary judgment); See also Fed. R. Civ. P. 37 advisory committee's note (1993)).

In sum, there exists no admissible evidence on the record supportive of Defendant's eleventh-hour explanation, and thus Defendant should be precluded from discussing, mentioning, or in any way referencing the same at trial.

*//*

7

### B. Allowing baseless arguments or reference to the attorney-fabricated, post hoc explanation would be extremely prejudicial

As the Ninth Circuit has clearly stated, "speculation is no substitute for evidence." *Kaur v. Ashcroft*, 95 F. App'x 879, 879 (9th Cir. 2004) (citing *Singh v. INS*, 292 F.3d 1017, 1024-25 (9th Cir.2002); *Lopez-Reyes v. INS*, 79 F.3d 908, 912 (9th Cir.1996)) (further citations omitted). Additionally, "[r]hetoric of lawyers is not a substitute for evidence." *Tomac, Inc. v. Coca-Cola Co.*, 418 F. Supp. 359, 362 (C.D. Cal. 1976).

Here, Defendant's attorneys are attempting to cloak their post-hoc speculations and rhetorical legal explanations with the air of evidentiary authority. This is extremely prejudicial and should therefore be excluded under Fed. R. Evid. 403. Should Defendant be permitted to plant the seed of this foundationless explanation for its policy change, Plaintiff will be forced to respond to merits (lacking as they are) of the same, with no evidentiary record available to do so, wasting precious trial time and resources rebutting an argument (that Defendant implemented the change to help consumers and therefore Defendant cannot possibly be found to have negligently implemented procedures which harmed those consumers) that has no basis in the record and which thus cannot be proven or disproven by the facts before the jury.

The nonexistent probative value of such speculative assertions (they are not even evidence as defined by the federal rules) is substantially outweighed by the danger that such assertions would unfairly prejudice Plaintiff, confuse the actual issues at trial, and patently mislead the jury into believing that Defendant's post-hoc explanation was ever actually considered at the time of Defendant's statutory violations, or before. The Court should therefore preclude any discussion, mention,

or reference to Defendant's untimely and baseless "the policy was changed to benefit consumers" assertions.

### C. The Court should preclude any discussion of or citation to any state law statute as somehow relevant to Defendant's policy change decision.

With no admissible evidence available to support Defendant's post-hoc "consumer benefit" reason for the subject policy change, Defendant sought to conjure such "evidence" by arguing that a New York law may have played a role in the implementation of the credit reporting policy, or at least the credit reporting policy could not have reasonably been expected to result in adverse credit decisions since it alleges complies with the New York law. This attempt to sidestep the disclosure rules was implemented by inserting citation to that New York law into the rebuttal report issued by Mr. John Ulzheimer, Defendant's credit expert.

However, during Mr. Ulzheimer's deposition, it became apparent that this "explanation" had been spoon-fed to him by Defendant's counsel, and that he had not incorporated the New York law of his own accord, but had been given the relevant citation by Defendant's counsel:

Q. Did anyone at Nissan tell you that their decision had anything to do with New York state law?

A. No, sir.

Q. In fact, you read Nissan's corporate rep deposition. They never referenced any reasons for the business change, right?

A. Again, I didn't take a deep dive into that but I don't recall any sort of testimony in that respect.

**Q. We have been trying to figure out why they did this the whole time.** So if you have any insight, can you please share it with us today?

**A. I would happily share it but I don't have any insight.**

**Q. So as I understand it, defense counsel provided you the citation to New York law, right?**

**A. That's fair. Yes, sir.**

Q. And that made it into your report, right?

A. As a footnote, that's right. Yes, sir.

*See* Exhibit A ("Ulzheimer Depo."), 78:15-79:7 (emphasis added).

Defendant's subsequent briefings have made it clear that Defendant intends upon arguing to the jury that its policy change was based on the New York law (or other undisclosed state laws), and therefore reasonable under that (or those) law(s). This argument should be excluded.

### i. The New York law is not relevant to Plaintiff's claims against Nissan or Nissan's defenses

Evidence is relevant only if "tending to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Fed. R. Evid. 401. As discussed in the preceding sections herein, Defendant has failed to provide even a scintilla of information as to the reasons behind the credit reporting policy change that resulted in Defendant's inaccurate reporting in this case. Defendant's 30(b)(6)

10

representatives **never** mentioned the New York law or any other law as a factor in the implementation of the (completely undocumented and unwritten) credit reporting policy. It is therefore indisputable that the only relevant evidence on the record is Defendant's testimony that the individuals who were involved in creating the credit reporting policy are no longer employed with Defendant, and, for that reason, Defendant cannot confirm what factors it considered when implementing the policy change. *See* Donley Decl. PAGE ID #2634, ¶ 32. Therefore, any reference to the New York law, or any other law, which was indisputably **not** considered in the policy decision at issue, would be irrelevant to the jury's determination as to whether that decision was reasonable at the time.[1]

### D. Allowing reference to the New York law, or any other similar state laws, would result in prejudice, confusion and waste of time

Even if the New York law (or any other similar state laws) were somehow relevant under Fed. R. Evid. 401, it (they) should be excluded pursuant to Fed. R. Evid. 403. Thereunder, relevant evidence may be excluded where its probative value is outweighed by prejudice, confusion or waste of time. Allowing evidence concerning an obscure New York law, which Defendant **never** considered in crafting the policy at issue, would undoubtedly result in all three. If such evidence or reference were admitted, Plaintiff would be forced to expend valuable trial time and resources in the explanation of a plethora of wholly unrelated topics, including an explanation of the language of the statute, the legislative history of the statute, the

---

[1] Additionally, Plaintiff notes that she is a citizen of California. A New York statute concerning credit reporting of New York citizens credit would be patently irrelevant to Plaintiff, and thus patently irrelevant to Plaintiff's claims under the FCRA and California analog.

11

interpretation of the statute by New York courts, the applicability of the statute to credit reporting, whether the New York law is preempted by the FCRA, etc. The jury would be confused by this mini trial about an obscure New York law that was never mentioned or hinted at by Defendant (except through the meddling by its counsel with Defendant's expert's rebuttal report). Plaintiff should not be required to shadow-box with this imaginary, post-hoc explanation, and the jury should not be required to engage in the statutory interpretation that would be necessary for the admission of the same. [2]

## II.     CONCLUSION

Wherefore, a Motion in Limine should be granted directing Nissan, Nissan's witnesses, and Nissan's attorneys to abstain from any reference to explanations as to why Defendant's relevant consumer credit reporting policy was originally implemented, and specifically excluding (1) any testimony from Defendant's corporate representative regarding any such explanation, and (2) any reference or mention of N.Y. Pers. Prop. Law § 343(4)(c) or any other state law to suggest or otherwise hint that Defendant's credit reporting policy was implemented to comply with, or is reasonable under, such laws.

//

---

[2] Again, Plaintiff notes that she is not a citizen of New York. Any citation to a New York statute would also be unfairly prejudicial because the jury would necessarily be attempting to apply a New York law that allegedly approves of Defendant's credit reporting policy, regardless of the fact that Plaintiff is a citizen of California thus the New York law would not apply to her anyway.

12

RESPECTFULLY SUBMITTED,

DATED: February 14, 2023

By: */s/David A. Chami*
David A. Chami (AZ: 027585)
(Admitted *pro hac vice*)
**PRICE LAW GROUP, APC**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5515
F: (818) 600-5515
E: david@pricelawgroup.com

Youssef H. Hammoud (SBN: 321934)
**PRICE LAW GROUP, APC**
6345 Balboa Blvd., Suite 247
Encino, CA 91316
T: (818) 600-5596
F: (818) 600-5596
E: youssef@pricelawgroup.com
*Attorneys for Plaintiff,*
*Mayra Aranda*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

**PRICE LAW GROUP, APC**

*/s/ Roxanne Harris*

13