MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
ALISA A. GIVENTAL (State Bar No. 273551)
aag@severson.com
SEVERSON & WERSON
A Professional Corporation
595 Market Street, Suite 2600
San Francisco, California 94105
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
NISSAN MOTOR ACCEPTANCE
COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MAYRA ARANDA,<br><br>            Plaintiff,<br><br>      vs.<br><br>NISSAN MOTOR ACCEPTANCE CORPORATION; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; AND EQUIFAX INFORMATION SERVICES, LLC.,<br><br>            Defendants. | Case No. 2:21-CV-03451<br><br>**NMAC'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RE EFFECT OF CREDIT REPORTING POLICY AT ISSUE [DKT. # 136]** |

06888.0316/16390717.1

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE RE EFFECT OF CREDIT REPORTING POLICY

## Table of Contents

I. INTRODUCTION ........................................................................................... 1

II. THE LEGAL STANDARD AT ISSUE IS AN OBJECTIVE RATHER THAN A SUBJECTIVE ONE ................................................................................... 2

III. DEBORAH DONLEY AND NMAC HAVE TESTIFIED CONSISTENTLY ABOUT THE CREDIT REPORTING POLICY AT ISSUE IN THIS CASE ........... 4

IV. THE NEW YORK STATUTE IS RELEVANT TO BOTH ACCURACY AND WILLFULNESS .................................................................................... 5

V. THE EVIDENCE MAY NOT BE EXCLUDED UNDER FRE 403 ................... 7

   A. Evidence Showing That NMAC's Change In Credit Reporting Policy Tends To Benefit Consumers Would Not Result In "Unfair" Prejudice To Plaintiff. ...... 7

     1. The Evidence Is Not Hearsay ............................................................. 8

     2. NMAC Did Not Fail To Identify Other Witnesses. ............................ 9

     3. Donley Was The Only 30(b)(6) Witness Produced By NMAC On Credit Reorting Issues ........................................................................... 10

   B. Nor Would Evidence That NMAC's Practice Benefits Consumers Mislead The Jury Or Result In a Wasting Of Time At Trial ........................................ 11

   C. Allowing Reference To The New York Statute Would Not Violate FRE Rule 403 Either ...................................................................................................... 12

VI. NMAC WOULD BE SEVERELY PREJUDICED IF THIS EVIDENCE WERE EXCLUDED AT TRIAL ........................................................................ 13

VII. CONCLUSION ............................................................................................ 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Banneck v. HSBC Bank USA, N.A.*,
 Case No. 15-cv-02250-HSG, 2016 WL 3383960 (N.D. Cal. 2016) ....................3

*Gorman v. Wolpoff & Abramson, LLP*,
 584 F.3d 1147 (9th Cir. 2009) .........................................................................3

*Grigoryan v. Experian Info. Sols., Inc.*,
 84 F. Supp. 3d 1044 (C.D. Cal. 2014) ..............................................................7

*Safeco Insurance Co. v. Burr*
 (2007) 551 U.S. 47 ........................................................................................6, 7

*U.S. v. Hankey*,
 203 F.3d 1160 (9th Cir. 2000) ..........................................................................8

**Statutes**

Fair Credit Reporting Act ...............................................................................2, 5, 6

**Other Authorities**

Fed. R. Evid. 801(c)...............................................................................................9

FRE 403 ...........................................................................................................7, 8

Rule 26................................................................................................................2, 9

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE RE EFFECT OF CREDIT REPORTING POLICY

## I.   INTRODUCTION

This motion *in limine* represents the second time that Plaintiff has tried to prevent NMAC from presenting any evidence to defend its credit reporting policy from Plaintiff's claims of inaccuracy.

On December 6, 2022, Plaintiff filed a motion to strike evidence that NMAC had submitted in opposition to Plaintiff's motion for summary judgment.  Dkt. #123. Plaintiff argued in that motion that NMAC's evidence submitted in opposition to her summary judgment motion was inconsistent with the deposition testimony of NMAC's credit reporting manager and 30(b)(6) witness, Deborah Donley, who had testified that she could not identify what factors NMAC had considered at the time the policy was implemented because the employees who had made that decision had since left the company.  Plaintiff's motion to strike made numerous arguments to try to exclude that evidence, all of which are reasserted in this motion *in limine*.

The Court denied Plaintiff's motion to strike on January 12, 2023, finding that Donley's declaration in opposition to the summary judgment motion was not inconsistent with her deposition testimony, and necessarily rejecting all of Plaintiff's other arguments for excluding that evidence.  Dkt. # 131.

The Court should again reject Plaintiff's attempt to have this case decided without consideration of the evidence that shows NMAC's credit reporting policy was reasonable, beneficial to consumers and therefore not inaccurate.

As explained below, Plaintiff misconstrues how the central issue in this case—whether NMAC's credit reporting was inaccurate—should be decided.  She believes that the jury can only consider whatever factors NMAC's former employees took into consideration when this policy was adopted years ago.  Thus, when Donley acknowledged at deposition that this information is no longer available because the decisionmakers had left the company, Plaintiff and her counsel apparently decided that this case is over because NMAC will be unable to defend its policy at trial.

06888.0316/16390717.1

1

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE RE EFFECT OF CREDIT REPORTING POLICY

Plaintiff is wrong.  Under clear Ninth Circuit precedent, whether credit reporting is "inaccurate" depends upon whether it *should have been* expected to adversely affect credit decisions.  This is to be decided on an ***objective*** basis, based on all of the available evidence, not based upon evidence of what the furnisher subjectively considered at the time.

Donley's testimony and NMAC's trial evidence must be admitted in order to allow the jury to make that determination, should this case survive to trial.  That evidence will show that NMAC's policy was reasonably expected to benefit customers, by preventing derogatory reporting based on unpaid end of lease charges, increasing consumers' credit scores and *positively* impacting future credit decisions.  The New York statute relied upon by NMAC's credit reporting expert supports that conclusion, and also disproves Plaintiff's claim that NMAC willfully violated the FCRA and CCRAA in light of the prevailing legal guidance.

None of Plaintiff's arguments for excluding this critical evidence has any merit.  This evidence is not inconsistent with Donley's prior deposition testimony, as this Court has already found.  It is not hearsay, and NMAC is not relying upon the views of witnesses it failed to identify in its Rule 26 disclosures.  Introduction of this evidence would not *unfairly* prejudice Plaintiff, confuse the jury, or force Plaintiff to waste trial time by introducing evidence she would not otherwise introduce at trial.  Indeed, this evidence is crucial to NMAC's defense against Plaintiff's claim of inaccuracy, and barring it would irreparably prejudice NMAC.

For these reasons, explained in more detail below, Plaintiff's motion *in limine* should be denied.

## II.   THE LEGAL STANDARD AT ISSUE IS AN OBJECTIVE RATHER THAN A SUBJECTIVE ONE

To begin with, Plaintiff's motion *in limine* is premised upon a fundamental misunderstanding of the key legal principle at issue in this case.

/ / /

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE RE EFFECT OF CREDIT REPORTING POLICY

Plaintiff alleges that NMAC is liable under the CCRAA for furnishing "inaccurate" information to the CRAs concerning her accounts. The Ninth Circuit has held that information furnished to the CRAs cannot be deemed "inaccurate" unless it can be expected to adversely affect credit decisions. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (citing *Sepulvado v. CSC Credit Servs., Inc.,* 158 F.3d 890, 895 (5th Cir.1998) and *Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37, 40 (D.C.Cir.1984)). Plaintiff concedes in her motion for summary judgment that this is the standard for determining inaccuracy in the Ninth Circuit. Dkt. #102-1, p. 10, Page ID #974.

To prove inaccuracy, then, it is the consumer's obligation to convince the finder of fact that an adverse effect *should have been* expected. *Gorman, supra*, 584 F.3d at 1163.

Importantly, for purposes of this motion and trial, this test is an **objective** one.

> As the Ninth Circuit made clear in *Gorman*, the "materially misleading" standard is objective: credit reporting must be "misleading in such a way and to such an extent that it *can be expected to* adversely affect credit decisions.

*Banneck v. HSBC Bank USA, N.A*., Case No. 15-cv-02250-HSG, 2016 WL 3383960, at *7 (N.D. Cal. 2016) (emphasis in original) (citing *Gorman*, 584 F.3d at 1163).

Thus, inaccuracy does ***not*** turn on whether the furnisher subjectively thought its reporting would have an adverse impact, or what factors it actually considered in reaching that decision. Rather, the jury must decide, based on all of the available evidence, whether the furnisher *should have* expected that the information it provided to the CRAs would have an adverse impact on credit decisions.

As shown below, Plaintiff's motion *in limine* is based on her erroneous assumption that inaccuracy will be determined at trial based upon evidence of what factors NMAC subjectively considered at the time it implemented the credit reporting policy at issue.

### III.   DEBORAH DONLEY AND NMAC HAVE TESTIFIED CONSISTENTLY ABOUT THE CREDIT REPORTING POLICY AT ISSUE IN THIS CASE

Plaintiff argues throughout her motion that NMAC intends to present evidence at trial that is inconsistent with the evidence it produced during discovery, specifically, the testimony provided by its credit reporting manager and 30(b)(6) witness Deborah Donley.  This claim is untrue.

At her deposition, Donley, who is currently the Supervisor of NMAC's Credit Bureau Management team, was asked about the decision that NMAC made to stop reporting terminated lease accounts negatively based on unpaid end of lease charges. Donley explained that this was a decision that had been made years earlier by upper management, before she joined the credit bureau team, such that she could not testify why that decision had been made.  Plaintiff's Motion at p. 2 (citing Donley Depo., 63:1-64:4).

Her declaration provided in connection with the pending summary judgment motions was entirely consistent with this deposition testimony.  It stated:  "The 2016 change was made by individuals who are no longer with the company. For that reason, and because I was not personally involved in the decision, I cannot confirm what factors the company considered."  Donley Declaration, Dkt #112-3, ¶ 32.  In denying Plaintiff's prior motion to strike Donley's declaration, this Court already concluded that "[Donley's] declaration does not contradict her prior deposition testimony."  Order Denying Plaintiff's Motion to Strike, Dkt. #131.

Donley's trial testimony will also be consistent with her deposition testimony. Because neither Donley nor any other current NMAC employees were involved in this decision made years ago, NMAC will not be offering testimony at trial as to what factors NMAC in fact considered at the time it implemented this policy.

As explained above, however, the relevant question for trial is *not* what factors NMAC actually considered at the time.  Rather, the relevant question is whether NMAC should reasonably have expected this policy to adversely affect

consumer credit decisions.  The evidence at trial will show that not reporting derogatory information about unpaid end of lease charges should have been expected to have a positive rather than a negative impact on NMAC lease customers.

Donley herself expected the policy to benefit customers by improving their credit scores.  At her deposition, she testified that she was in "total agreement" with this decision that had been made by her predecessors.  She also testified that she believed NMAC's reporting is consistent with its obligations to report accurate information, and in compliance with the Fair Credit Reporting Act and Metro 2 guidelines.  See testimony attached to Dkt. #125-1.

Plaintiff's counsel never asked Donley *why* she agreed with this policy or believed it was beneficial to consumers.  Had counsel asked these questions, Donley would have explained that she believes the manner in which these accounts are reported is accurate and beneficial to customers who paid as agreed over the term of their leases but still had unpaid end of lease charges.  Plaintiff's counsel presumably chose not to ask such questions based on the mistaken belief that all that matters is what information NMAC actually considered at the time the policy was implemented.  Having failed to inquire into NMAC's position at Donley's deposition, Plaintiff is now seeking to exclude this evidence at trial based on her claim of surprise and prejudice.

## IV.    THE NEW YORK STATUTE IS RELEVANT TO BOTH ACCURACY AND WILLFULNESS

Based upon the same reasoning, Plaintiff also seeks to preclude any mention of a New York statute, N.Y. Pers. Prop. Law §343(4)(c), at trial.  Plaintiff's argument is that, because there is no evidence that NMAC actually reviewed this statute or took it into consideration when the policy at issue was adopted in 2016, then the statute cannot be relevant and no reference should be allowed to it at trial.

/ / /

Plaintiff argues in her motion that NMAC "intends upon arguing to the jury that its policy change was based on New York law (or other undisclosed state laws) . . ." Motion, 10:14-16.  That is simply untrue; NMAC will make no such argument to the jury because evidence of what factors were taken into consideration is no longer available due to the passage of time.[1]  In any event, as already explained above, the question for trial is not what factors NMAC actually considered, but whether NMAC reasonably should have expected this policy to have an adverse effect on consumer credit decisions in the future.

The New York statute is indisputably relevant to that question.  NMAC's credit reporting expert has opined that its reporting is not inaccurate, basing his opinion on this New York statute and other factors.  The FCRA is a federal statute that requires accurate reporting regardless of where the consumer resides.  The fact that New York precludes lessors from derogatory reporting of unpaid end of lease charges is relevant because it shows or tends to show that suppression of derogatory reporting is expected to benefit rather than harm consumers, so it is not inaccurate within the meaning of the statute.  Indeed, if Plaintiff's theory were correct, this would mean that New York is statutorily obligating lessors to furnish "inaccurate" information, by reporting lease  accounts paid as agreed even if unpaid end of lease charges were charged off and sent to collection.

This statute is also highly relevant to the question of whether NMAC's violations were "willful," entitling Plaintiff to recover punitive damages. Willfulness, for purpose of both the FCRA and the CCRAA, means that the defendant has acted in conscious disregard of its statutory obligations, in light of the prevailing case law and legal authorities. *Safeco Insurance Co. v. Burr* (2007) 551

---

[1] Plaintiff also seems to imply that it is highly suspicious that NMAC does not maintain written records of what factors were considered when the policy was adopted. Motion, 1:21-23.  That suggestion is also without merit, but will be addressed if and when it is raised at trial.

6

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE RE EFFECT OF CREDIT REPORTING POLICY

U.S. 47, 69; *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014).  A defendant's actions are not willful unless it "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless" *in light of prevailing legal guidance*.  *Safeco*, 551 U.S. at 69.  If New York precludes lessors from reporting in the manner that Plaintiff advocates, that evidence must be considered by the jury in deciding whether NMAC's violations were willful.

## V.        THE EVIDENCE MAY NOT BE EXCLUDED UNDER FRE 403

Plaintiff also argues that, even if this evidence is relevant, it should still be excluded under FRE Rule 403 on the grounds that it is prejudicial, would mislead or confuse the jury, and/or would result in a waste of time at trial.  None of these arguments holds any water.

### A.        Evidence Showing That NMAC's Change In Credit Reporting Policy Tends To Benefit Consumers Would Not Result In "Unfair" Prejudice To Plaintiff.

Plaintiff first argues that she will be "prejudiced" if NMAC is allowed to present evidence at trial showing that its credit reporting policy was expected to benefit rather than harm consumers.  She claims that NMAC will be offering "post-hoc justifications" for its policy, which she would then be unable to rebut because there is no longer an evidentiary record available of what factors were considered at the time the policy was implemented.  See Motion, 8:9-9:2.

This prejudice argument fails, first, because neither side will be offering evidence of what factors were actually considered at the time of the events at issue.  That evidence is no longer available, as repeatedly explained above, and as Donley has testified.

More importantly, Plaintiff will not be prejudiced because she will have every opportunity at trial to rebut NMAC's position that its reporting benefits rather than harms consumers.  Plaintiff knows exactly what arguments NMAC will present in support of this position, because NMAC explained its position on accuracy during

discovery and in the parties' summary judgment briefing.  Plaintiff, her counsel and her expert understand that NMAC will contend its practice of not derogatorily reporting unpaid end of lease charges benefitted consumers by increasing their credit scores, thereby decreasing the likelihood of an adverse decision in the future.[2] Plaintiff has already made preparations to counter that position; as set forth in the summary judgment briefing, Plaintiff will argue that NMAC's reporting caused accounts to remain on credit reports for longer, potentially harming consumers.

The fact that NMAC's evidence makes it more likely that the jury will find its reporting was not inaccurate does not constitute "prejudice" as that term is used in FRE 403:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.  Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

*U.S. v. Hankey*, 203 F.3d 1160, 1173 (9th Cir. 2000) (citing *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983).

### 1.    The Evidence Is Not Hearsay.

Plaintiff tries to bolster her claim of prejudice by repeating three arguments that she already made in her unsuccessful motion to strike.  See Dkt. #123.  The Court should reject each of these arguments again.

First, she argues that NMAC will be relying upon inadmissible hearsay at trial because Donley's declaration mentioned internal discussions about this issue. Motion, p. 6.  But this argument fails for the reasons NMAC explained in

---

[2] Indeed, Plaintiff's own credit reporting expert has acknowledged that NMAC customers and Plaintiff in particular benefited from a higher credit score because of NMAC's policy.

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE RE EFFECT OF CREDIT REPORTING POLICY

successfully opposing the prior motion to strike. Donley is not conveying the opinions of other employees, but is instead offering her own view, as NMAC's 30(b)(6) witness, that this is a beneficial policy, and why:

> I personally would not expect and did not expect that this change would adversely affect customers' credit. To the contrary, my expectation was always that this would benefit customers by ensuring that they would not be subjected to derogatory reporting based on unpaid end of lease charges.

Donley Decl., ¶ 32.

Further, this testimony is not offered to prove the truth of the matter asserted, that the policy is beneficial. And whether the policy is beneficial to consumers will not be decided based on the subjective beliefs of Donley or any other employee.

Rather, NMAC is presenting information at trial from which the trier of fact could reasonably conclude that NMAC's reporting was not expected to have an adverse effect and was not inaccurate within the meaning of the statute. Whether the trier of fact agrees with Donley or not, her testimony about the expected benefit to consumers is relevant to the accuracy issue to be tried. See Fed. R. Evid. 801(c).

This evidence is admissible for other non-hearsay purposes as well. For example, it disproves Plaintiff's assertion that NMAC's reporting was willfully inaccurate. See discussion at page 7 *supra*. Since Plaintiff has placed NMAC's state of mind at issue by alleging that it willfully violated the CCRAA, she cannot complain that NMAC is offering testimony that proves or tends to prove that no willful violation occurred. Plaintiff is trying to extend the hearsay rule to prevent NMAC from responding to the allegations that have been made against it in this case. Both in offering her own views and in testifying on behalf of NMAC as a 30(b)(6) witness, Donley may properly present this evidence.

### 2. NMAC Did Not Fail To Identify Other Witnesses.

Second, and relatedly, Plaintiff claims prejudice because NMAC did not identify other employees who believe its policy benefits consumers in its Rule 26

disclosures.  Motion, pp. 6-7.  But NMAC is not relying upon the testimony of other employees to prove its reporting was beneficial to consumers.  It relied upon Donley to explain the company's position on this issue, she was properly identified in NMAC's disclosures, she was produced as NMAC's 30(b)(6) witness, and Plaintiff had a full and fair opportunity to depose her.

### 3. Donley Was The Only 30(b)(6) Witness Produced By NMAC On Credit Reorting Issues.

Third, Plaintiff continues to argue that NMAC produced multiple 30(b)(6) witnesses who were unable to describe the factors NMAC considered in setting this credit reporting policy or identify the persons who made the decision.  Motion, p. 2.

As NMAC explained in opposing Plaintiff's motion to strike, however, this claim is simply untrue.  Deborah Donley is the only NMAC employee who testified as a 30(b)(6) witness on credit reporting issues.  She explained that upper management had made the decision before she joined the credit reporting team, but Plaintiff's counsel never asked her to identify the former employees who had made the decision.

The other 30(b)(6) was **not** produced "on the same topic," as claimed by Plaintiff.  Motion, 2:23-25.  That witness, Keith Wieber, is a supervisor in the consumer communications area, and he was designated to testify about the history of Plaintiff's lease accounts, how to interpret certain NMAC account records, and NMAC's policies for collecting amounts owed for excess mileage and wear.[3]  His job responsibilities have nothing to do with credit reporting:

---

[3] See Wieber Tr., 17:8-13. The three categories for which Wieber was designated were :
- Topic #8: "All facts regarding the history of the Nissan accounts at issue, all contacts with any person/entity regarding the account, and all accounts regarding the account." See Wieber Tr., 16:3-14.
- Topic #10: "The meaning, content, and/or decoding of Nissan's records regarding the plaintiff or Nissan accounts at issue in this case, including but not limited to: ACDVs, any account database screens, and Nissan's archived

Q: In your role, are you responsible for any type
of credit reporting?
A: No.
Q: In your role, are you exposed to any type of
credit reporting that would give you knowledge of how
accounts credit report [sic]?
A: No.

Wieber Depo., 49:5-11.  So Wieber's lack of knowledge about the credit reporting policy change or who made that change is not surprising and does not support Plaintiff's request to exclude this evidence at trial.

**B.      Nor Would Evidence That NMAC's Practice Benefits Consumers Mislead The Jury Or Result In a Wasting Of Time At Trial.**

Plaintiff also argues in passing, with scant explanation, that this evidence will "mislead" the jury and "waste precious trial time" by forcing Plaintiff to rebut NMAC's contentions at trial.  Neither argument is true.

This evidence will not "mislead the jury into believing that Defendant's post-hoc justification was ever actually considered at the time of Defendant's statutory violations, or before."  Motion, 8:24-26.  The jury cannot be misled in the manner Plaintiff fears because NMAC will not be presenting any evidence as to what factors NMAC actually considered at the time of the 2016 policy change.

Nor will Plaintiff have to "waste time" by rebutting any argument about why the policy was adopted.  If NMAC were to make the argument that Plaintiff fears (it will not), Plaintiff could rebut that argument in less than 30 seconds by simply

---

investigation records." See Wieber Tr., 16:15-25.
- Topic #17: "Nissan's policy and/or procedures with respect to collecting amounts owed for excess mileage and/or wear associated with a lease agreement." See Wieber Tr., 17:1-7.
- Topic #24: "Any documents referencing the Nissan accounts that are the subject of this lawsuit." See Exhibit A, Wieber Tr., 17:8-13.

presenting Donley's declaration in which she acknowledges that NMAC does not have evidence of what was considered at the time.

What Plaintiff *will* have to rebut at trial is NMAC's evidence that its credit reporting policy benefitted customers by preventing derogatory evidence from populating their credit reports, increasing their credit scores and positively impacting credit decisions involving those customers in the future.  However, Plaintiff was going to have to present that evidence at trial in any event, so granting Plaintiff's motion would not save time at trial.

### C. Allowing Reference To The New York Statute Would Not Violate FRE Rule 403 Either.

Plaintiff also relies upon FRE 403 to try to preclude any reference to the New York statute at trial.  Her primary argument is that this would waste time because she would then be required to "explain" the language of the statute or its legislative history, how it has been interpreted, whether it is preempted, etc.  Motion, 11:19-12:2.  In addition, she argues the jury would be confused by the focus on this "obscure" New York law.

Plaintiff's exclusionary argument is based on a mischaracterization of what role this statute will apply at trial.  NMAC will not be arguing that New York law governs in this case or asking jurors to engage in statutory interpretation of this (or any) law.  Rather, NMAC's credit reporting expert will be using the statute to support his opinion that NMAC's reporting is not inaccurate, since it precludes reporting of derogatory information about end of lease charges.  If Plaintiff's credit reporting expert contends that NMAC's manner of reporting is inaccurate despite this statute, then he will presumably explain his contrary position at trial.

Likewise, NMAC is entitled to defend against Plaintiff's allegation of a willful violation by pointing out that its manner of credit reporting is consistent with the prevailing legal guidance, including the New York statute.  Plaintiff cannot keep / / /

06888.0316/16390717.1

12

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE RE EFFECT OF CREDIT REPORTING POLICY

NMAC from presenting this evidence which proves any violation was not willful by arguing that it would be too confusing to the jury or take too much time at trial.

## VI.   NMAC WOULD BE SEVERELY PREJUDICED IF THIS EVIDENCE WERE EXCLUDED AT TRIAL

Not only will Plaintiff not suffer any unfair prejudice if this evidence is allowed at trial, but NMAC would suffer severe, irreparable prejudice if this evidence were excluded.

As to the evidence that its credit reporting benefitted rather than harmed consumers, it is unclear how NMAC could even present a defense at trial if Plaintiff's motion *in limine* were granted.  NMAC would presumably not be allowed to argue to the jury that its elimination of derogatory credit reporting for unpaid end of lease charges improved customers' credit scores and positively impacted credit decisions affecting those customers in the future.  Donley would be excluded from testifying that she expected that result, or that she believes the change had such an impact on NMAC's customers.  NMAC's witnesses and attorneys would be prevented from presenting any argument to the jury about the positive impact on consumers.  Plaintiff is essentially asking the Court to prevent NMAC from putting on any defense at trial, to the point that the jury would have no alternative but to find in favor of Plaintiff.

Similarly, barring any reference to the New York statute would irreparably prejudice NMAC.  Its credit reporting expert would not be able to use the law to support his opinion that elimination of derogatory reporting is expected to benefit consumers.  And Plaintiff and her counsel would be free to argue that NMAC acted in reckless disregard of its legal obligation to report accurately, while the jury will not be told about this statute that actually precludes lessors from the derogatory reporting of unpaid lease charges that Plaintiff contends was the correct way to report her account.

/ / /

# VII.   CONCLUSION

For all of the reasons set forth above, the Court should deny Plaintiff's motion *in limine* and allow NMAC to introduce evidence showing that its credit reporting policy should reasonably have been expected to benefit consumers and is not inaccurate, and that any violation alleged by Plaintiff was not willful in light of the prevailing legal guidance.

DATED: February 21, 2023            SEVERSON & WERSON
                                    A Professional Corporation


                                    By:    */Mark D. Lonergan*
                                         MARK D. LONERGAN

                                    Attorneys for Defendant NISSAN MOTOR
                                    ACCEPTANCE COMPANY LLC

06888.0316/16390717.1                    14

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE RE EFFECT OF CREDIT REPORTING POLICY

# Exhibit A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


MAYRA ARANDA,                    )
                                 )
                Plaintiff,       )
                                 )
           v.                    )
                                 )  No. 2:21-cv-03451-CBM-PD
NISSAN MOTOR ACCEPTANCE          )
CORPORATION; EXPERIAN            )
INFORMATION SOLUTIONS, INC.;     )
TRANS UNION LLC; and EQUIFAX     )
INFORMATION SERVICES, LLC,       )
                                 )
                Defendants.      )
_____  )




VIDEOTAPED REMOTE DEPOSITION OF

NISSAN MOTOR ACCEPTANCE CORPORATION

THROUGH ITS REPRESENTATIVE, KEITH WIEBER

MONDAY, JULY 18, 2022






STENOGRAPHICALLY REPORTED BY:

LINDSAY PINKHAM

CSR 3716, CCRR 17

JOB NO. 484935


1

KEITH WIEBER

BARKLEY
Court Reporters

Remote deposition of NISSAN MOTOR ACCEPTANCE CORPORATION THROUGH ITS REPRESENTATIVE, KEITH WIEBER, taken on behalf of Plaintiff, commencing at 10:11 a.m. Pacific Time on Monday, July 18, 2022, before LINDSAY PINKHAM, CSR 3716, CCRR 17.

APPEARANCES OF COUNSEL:

For Plaintiff:

    PRICE LAW GROUP
    BY: YOUSSEF H. HAMMOUD, ESQ.
    6345 Balboa Boulevard
    Suite 247
    Encino, California 91316
    (818) 600-5596
    youssef@pricelawgroup.com
    (Remote appearance)

For Defendant NISSAN MOTOR ACCEPTANCE CORPORATION:

    MCGLINCHEY STAFFORD
    BY: ROBERT J. IM, ESQ.
    18201 Von Karman Avenue
    Suite 350
    Irvine, California 92612
    (949) 381-5900
    rim@mcglinchey.com
    (Remote appearance)

Also Present,

    JOSEPH APATOV, ESQ.
    (Remote appearance)

2

KEITH WIEBER

BARKLEY
Court Reporters

                              I N D E X


WITNESS                    EXAMINATION BY                    PAGE

NISSAN MOTOR        MR. HAMMOUD                                5
ACCEPTANCE
CORPORATION THROUGH
ITS REPRESENTATIVE,
KEITH WIEBER


                            E X H I B I T S

EXHIBIT NO.                  DESCRIPTION                     PAGE

Exhibit 1    Fed R. Civ. P. Second 30(b)(6)                   15
             Notice of Deposition of Nissan
             Motor Acceptance Corporation, 6
             pages

Exhibit 2    Account notes and transaction                   19
             history, NMAC 000039-175 plus
             unnumbered pages, 141 pages total

Exhibit 3    Lease documents produced by                     28
             Nissan,  NMAC 00001-39, 39 pages

Exhibit 4    Equifax credit report,                          64
             ARANDA000001-167, 167 pages

Exhibit 5    TransUnion documents, TU0001-64,                67
             64 pages




                  INSTRUCTIONS NOT TO ANSWER

                          (None)


                  INFORMATION REQUESTED

                          (None)




                              3


                       KEITH WIEBER

BARKLEY
Court Reporters

A    While it was shared, no, I don't have them in my memory.

Q    Okay.  So one of the topics is topic 8, so:

"All facts regarding the history of the Nissan accounts at issue, all contacts with any person/entity regarding the account, and all accounts regarding the account."

Do you recall this being one of the topics you were told you would have to be prepared to testify about today?

A    Yes.

Q    And are you prepared to testify to this topic?

A    Yes.

Q    OK.  The other topic, 10:

"The meaning, content, and/or decoding of Nissan's records regarding the plaintiff or Nissan accounts at issue in this case, including but not limited to: ACDVs, any account database screens, and Nissan's archived investigation records."

Are you prepared to testify to this topic today?

A    Yes.

16

BARKLEY
Court Reporters

Q     Okay.  17:

"Nissan's policy and/or procedures with

respect to collecting amounts owed for

excess mileage and/or wear associated

with a lease agreement."

Are you prepared to testify to this topic?

A     Yes.

Q     And 24:

"Any documents referencing the Nissan

accounts that are the subject of this

lawsuit."

Are you prepared to testify to this?

A     Yes.

Q     Okay.  And these topics, this is something you were told about, that you would be required to testify to those topics at issue?

A     Yes.

Q     Okay.  What is your understanding of the claims being made by plaintiff against defendant Nissan?

A     My understanding is the issue comes down to the reporting of the outstanding balance.

Q     In your preparation of today's deposition, did you go and review the three accounts at issue, including the history of those accounts?

A     Yes --

17

KEITH WIEBER

BARKLEY
Court Reporters

Q    Do you know how long charged-off accounts report before they eventually fall off a consumer's credit report?

A    I don't.

Q    In your role, are you responsible for any type of credit reporting?

A    No.

Q    In your role, are you exposed to any type of credit reporting that would give you knowledge of how accounts credit report [sic]?

A    No.

Q    In your role, do you work with any other departments that do credit reporting and talk to you about how to properly label accounts?

A    My interaction would be in regards to a customer disputing and submitting a dispute.  But not on how my department is reporting.  It would be a customer statement.

Q    Okay.  And you've told me that at the time the policy would have been to show this account closed, there's a balance owing, charged-off status; correct?

A    Yes.

Q    Has that policy since changed, since 2012?

A    Yes.

Q    Okay.  When did it change?

49

KEITH WIEBER

BARKLEY
Court Reporters

## **PROOF OF SERVICE**

**Mayra Aranda v. Nissan Motor Acceptance Company LLC**
**Case No. 2:21-cv-03451**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is 595 Market Street, Suite 2600, San Francisco, CA 94105.

On February 21, 2023, I served true copies of the following document(s):

**NMAC'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RE EFFECT OF CREDIT REPORTING POLICY AT ISSUE [DKT. # 136]**

on the interested parties in this action as follows:

| | |
|---|---|
| L. Tegan Rodkey<br>Price Law Group APC<br>6345 Balboa Boulevard Suite 247<br>Encino, CA 91316<br>Tel: 818-600-5526<br>Fax: 818-600-5426<br>Email: tegan@pricelawgroup.com | Attorneys for Plaintiff<br>MAYRA ARANDA |
| Youssef H. Hammoud, Esq.<br>Price Law Group, APC<br>6345 Balboa Blvd., Suite 247<br>Encino, CA 91316<br>Tel: (818) 600-5596<br>Fax: (818) 600-5596<br>Email: Youssef@pricelawgroup.com<br>roxanne@pricelawgroup.com | David A. Chami<br>(Admitted pro hac vice)<br>Price Law Group, APC<br>8245 N. 85th Way<br>Scottsdale, AZ 85258<br>T: (818) 600-5515<br>david@pricelawgroup.com |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 21, 2023, at San Francisco, California.

　　　　　　　　　　　　　　　　　　　　 /s/ Katrina D. Adkins
　　　　　　　　　　　　　　　　　　　　Katrina D. Adkins

06888.0316/16390717.1

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE RE EFFECT OF CREDIT REPORTING POLICY