MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
ALISA A. GIVENTAL (State Bar No. 273551)
aag@severson.com
SEVERSON & WERSON
A Professional Corporation
595 Market Street, Suite 2600
San Francisco, California 94105
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
NISSAN MOTOR ACCEPTANCE
COMPANY LLC f/k/a NISSAN MOTOR
ACCEPTANCE CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MAYRA ARANDA,<br><br>       Plaintiff,<br><br>  vs.<br><br>NISSAN MOTOR ACCEPTANCE CORPORATION,<br><br>       Defendant. | Case No. 2:21-CV-03451-CBM-PD<br><br>**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>**Pretrial Conference**: March 14, 2023 at 2:30 p.m.<br><br>**Trial**: March 28, 2023 at 10:00 a.m. |

## Table of Contents

I. SUMMARY STATEMENT OF CLAIMS AND DEFENSES ................................ 1

   A. Plaintiff's Claims And Their Elements ................................................ 1

     1. Plaintiff's Claims ................................................................... 1

     2. Elements Required To Establish Plaintiff's FCRA Claim ............................ 1

     3. Elements Required To Establish Plaintiff's CCRAA Claim ......................... 1

   B. NMAC's Affirmative Defenses, Their Elements, & Supporting Evidence ....... 2

     1. NMAC's Affirmative Defenses ................................................... 2

     2. Elements Of NMAC's Affirmative Defenses ................................... 2

     3. Key Evidence Supporting NMAC's Affirmative Defenses ...................... 3

II. ANTICIPATED EVIDENTIARY ISSUES ................................................ 4

III. ISSUES OF LAW GERMANE TO THE CASE ......................................... 4

   A. Legal Issues Raised By Plaintiff's FCRA Claim .................................. 5

     1. Was Plaintiff's Complaint Direct Notice Of Her Dispute? ...................... 5

     2. Did NMAC Have A Duty To Reinvestigate Information  That Experian's ACDV Did Not Mention? .................................................. 7

   B. Legal Issues Raised By Plaintiff's CCRAA Claim ................................ 8

     1. Was Plaintiff's Husband Her Agent So That His Actual And Constructive Knowledge Is Imputed To Plaintiff? ............................. 8

     2. Does The Continuous Accrual Theory Apply To CCRAA Claims? .............. 9

     3. Was NMAC Legally Obligated To Stop Reporting The Accounts Because They Were Too Old? ................................................ 10

     4. Can Plaintiff Recover Under The CCRAA  Without Proof Of Actual Damage? ........................................................................ 11

     5. Punitive Damages:  Who Awards Them? What Is The Proper Measure? .... 12

IV. BIFURCATION OF PUNITIVE DAMAGES ......................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdelfattah v. Carrington Mortg. Servs. LLC*,
No. 12-cv-04656-RMW, 2013 WL 5718463 (N.D. Cal. Oct. 21, 2013) ..................................................................................................... 12

*Bank of New York Mellon v. Citibank, N.A.*,
8 Cal. App. 5th 935 (2017) ................................................................... 9

*Cohen v. Equifax Info. Servs., LLC*,
No. 18-cv-6210, 2019 WL 5200759 (S.D. N.Y. Sept. 13, 2019),
aff'd, 827 Fed. Appx. 14 (2d Cir. 2020) .............................................. 6

*Connor v. First Student, Inc.*,
5 Cal. 5th 1026 (2018) ......................................................................... 12

*E-Fab, Inc. v. Accts., Inc. Servs.*,
153 Cal. App. 4th 1308 (2007) ............................................................. 9

*Ellis v. Advanta Bank*,
No. 16-cv-06437, 2017 WL 1436249 (N.D. Cal. Apr. 24, 2017) ......... 9

*Franklin v. Midwest Recovery Sys., LLC*,
No. 8:18-cv-02085 SBD FMX, 2021 WL 1035121 (C.D. Cal. Feb. 5, 2021) ................................................................................................. 12

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) .............................................................. 7

*Nelson v. Chase Manhattan Mortg. Corp.*,
282 F.3d 1057 (9th Cir. 2002) .......................................................... 5, 6

*Peasley v. Verizon Wireless (VAW) LLC*,
364 F. Supp. 2d 1198 (S.D. Cal. 2005) ................................................ 5

*Rara v. Experian Info. Sols., Inc.*,
No. 16-cv-06376-PJH, 2017 WL 1047020 (N.D. Cal. Mar. 20, 2017) ..................................................................................................... 12

*Roybal v. Equifax*,
405 F. Supp. 2d 1177 (E.D. Cal. 2005) .............................................. 5, 6

Defendant's Memo. of Contentions of Fact and Law

*Stalberg v. Western Title Ins. Co.*,
230 Cal. App. 3d 1223 (1991) ................................................................................ 9

*Stoff v. Wells Fargo Bank, N.A.*,
No. 3:21-cv-00793 BEN KSC, 2021 WL 5449036 (S.D. Cal. Nov.
22, 2021) ............................................................................................................... 13

*Sung Gon Kang v. Credit Bureau Connection, Inc.*,
No. 1:18-cv-01359, 2019 WL 1259444 (E.D. Cal. Mar. 19, 2019) ................... 10

*Trujillo v. First Am. Registry, Inc.*,
157 Cal. App. 4th 628, 68 Cal. Rptr. 3d 732 (2007) .......................................... 11

*Turner v. Experian Info. Servs., Inc.*,
No. 3:16-cv-630, 2017 WL 2832738 (N.D. Ohio June 30, 2017) ....................... 6

*Vasquez v. Bank of Am., N.A.*,
No. 15-CV-04072-RS, 2015 WL 7075628 (N.D. Cal. Nov. 13,
2015) ...................................................................................................................... 9

*Warner v. Experian Information Solutions, Inc.*,
931 F.3d 917 (9th Cir. 2019) ................................................................................. 5

**Statutes**

15 U.S.C. § 1681c(b)(1) ............................................................................................ 11

15 U.S.C. §§ 1681i(a)(1)(A), 1681s-2(b)(1), (c) ....................................................... 5

15 U.S.C. § 1681n ...................................................................................................... 12

15 USC 1681i(a)(2)(A-B) ............................................................................................ 7

15 USC § 1681c(a)(4) ........................................................................................... 10, 11

Cal. Civil Code § 1785.33 .................................................................................. 2, 8, 10

Civ. Code, §§ 1785.16, 1785.25(c), (f) .................................................................... 10

Civ. Code § 1785.25 ................................................................................................... 1

Civ. Code, § 1785.26(b), (c) ..................................................................................... 10

Civ. Code, § 1785.31(a)(2)(B) .................................................................................. 12

Civ. Code, § 2332 ........................................................................................................ 9

Civil Code § 1785.31(a) .......................................................................11, 12

Civil Code § 1785.33's ..............................................................................9, 10

FCRA ..............................................................................................*passim*

FCRA, 15 U.S.C. § 1681s—2b .............................................................. 1

**Other Authorities**

California Constitution ..............................................................................2

United States Constitution Fifth and Fourteenth Amendment ..................................2

## I.    SUMMARY STATEMENT OF CLAIMS AND DEFENSES

**A.    Plaintiff's Claims And Their Elements**

**1.    Plaintiff's Claims**

Plaintiff has alleged two claims:

Claim 1: Defendant violated the FCRA, 15 U.S.C. § 1681s—2b.

Claim 2: Defendant violated the CCRAA, Civ. Code § 1785.25.

**2.    Elements Required To Establish Plaintiff's FCRA Claim**

Apart from the defendant being a furnisher of credit information (which NMAC concedes it is), Plaintiff must prove the following four elements of her FCRA claim:

a.    NMAC furnished inaccurate information to a credit reporting agency about Plaintiff's account;

b.    Plaintiff notified the consumer reporting agency that Plaintiff disputed the reporting as inaccurate;

c.    The consumer reporting agency notified NMAC of the alleged inaccurate information that Plaintiff disputed; and,

d.    NMAC failed to investigate the allegedly inaccurate information in a reasonable manner.

**3.    Elements Required To Establish Plaintiff's CCRAA Claim**

To prove her CCRAA claim, Plaintiff must establish the following elements (of which NMAC concedes the first two):

a.    NMAC is a "person" as defined under the CCRAA;

b.    NMAC furnished information to a credit reporting agency;

c.    The information NMAC furnished was inaccurate;

d.    The inaccurate information that NMAC furnished can be expected to adversely affect credit decisions;

e.    NMAC knew or should have known the furnished information was inaccurate; and,

06888.0316/16390995.1                          - 1 -

f.   Plaintiff suffered actual damage as a result of the inaccurate credit reporting.

**B.   NMAC's Affirmative Defenses, Their Elements, & Supporting Evidence**

**1.   NMAC's Affirmative Defenses**

a.   Plaintiff's claim for violation of the CCRAA is barred by the statute of limitations set forth in Cal. Civil Code § 1785.33.

b.   Plaintiff's claims for compensatory damages under the FCRA and the CCRAA are barred, in whole or in part, by her failure to mitigate her damages.

c.   Plaintiff's claims for compensatory damages under the FCRA and the CCRAA are barred, in whole or in part, because they were caused by the negligent acts of third parties for whom Defendant NMAC is not responsible.

d.   Plaintiff's claim for punitive damages based on Defendant NMAC's alleged violation of the CCRAA is barred, in whole or in part, based on the Fifth and Fourteenth Amendment to the United States Constitution and the California Constitution, as excessive in light of the alleged harm caused by the violation.

**2.   Elements Of NMAC's Affirmative Defenses**

a.   Statute of limitations defense:  NMAC must establish that, before April 22, 2019, Plaintiff knew or reasonably should have known that Defendant NMAC furnished allegedly inaccurate information about Plaintiff to a credit reporting agency.

b.   Mitigation of damages defense:  NMAC must establish that Plaintiff failed to use reasonable efforts to mitigate her damages and the amount by which damages would have been mitigated.

c.   Third party negligence:  NMAC must establish that a third party's negligent conduct occurred after NMAC's conduct, and

06888.0316/16390995.1                              - 2 -

that the third party's conduct was not reasonably foreseeable to NMAC at the time it acted.

d. Punitive damages:  NMAC must establish that any punitive damages awarded are "grossly excessive" in light of (1) the degree of reprehensibility of the Defendant NMAC's misconduct; (2) the disparity between the actual or potential harm suffered by Plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases.

**3.  Key Evidence Supporting NMAC's Affirmative Defenses**

a. Statute of limitations defense: NMAC relies upon records and testimony from third parties Credit Karma, Equifax, Trans Union and Experian, as well as testimony from Plaintiff and her husband Sergio Aranda.

b. Mitigation of damages defense:  NMAC relies upon records and testimony from Plaintiff, her husband Sergio Aranda, Sandra Toledo, NMAC employee Deborah Donley, and NMAC's experts Jim Droske, John Ulzheimer and Diane Miller.

c. Third party negligence:  NMAC relies upon records and testimony from Plaintiff, her husband Sergio Aranda, Sandra Toledo, NMAC employee Deborah Donley, and NMAC's experts Jim Droske, John Ulzheimer and Diane Miller.

d. Punitive damages:  NMAC's defense is a legal argument, based on case law construing the requirements for an award of punitive damages and the permissible ratio of punitive to compensatory damages.

/ / /

/ / /

06888.0316/16390995.1

- 3 -

Defendant's Memo. of Contentions of Fact and Law

## II.    ANTICIPATED EVIDENTIARY ISSUES

NMAC anticipates the following evidentiary issues will or may arise at trial:

1.    NMAC has filed a motion *in limine* to preclude any evidence of or reference to the fact that Plaintiff's mother is disabled, on that ground that this disability is irrelevant, will result in prejudice to NMAC by garnering sympathy from jurors, and would necessitate an undue consumption of time at trial.  *See* Dkt. #137.

2.    In his expert report and at his deposition, Plaintiff's real estate expert Yehya Safiedine expressed the opinion that the Arandas "would have had" their offer accepted for a property in Coronado in which they were interested, and thus would have been able to purchase that property.  If Safiedine attempts to offer this opinion at trial, NMAC will move to exclude it on the grounds that it is speculative and not a proper expert opinion.

3.    Plaintiff has filed a motion *in limine* to preclude NMAC from introducing any evidence that NMAC's credit reporting policy can be expected to benefit customers and positively affect credit decisions.  Dkt. #136.  NMAC is opposing that motion on the ground that such evidence is critical to NMAC's defense to Plaintiff's claims, and NMAC cannot be barred from introducing this evidence simply because evidence of what its decision makers actually considered at the time the policy was adopted is no longer available due to the passage of time.

4.    Plaintiff has filed another motion *in limine* to preclude any evidence of her settlements with the CRAs.  Dkt. #134.  NMAC is also opposing that motion, on the ground that such settlements are relevant under the one satisfaction rule unless and until Plaintiff can establish that she has suffered discrete injuries as a result of the actions of the various defendants, which she has not done and cannot do.

## III.    ISSUES OF LAW GERMANE TO THE CASE

NMAC sets forth below the issues of law germane to the case that it anticipates will or may arise at trial, and NMAC's position on each issue.

**A.      Legal Issues Raised By Plaintiff's FCRA Claim**

     **1.      Was Plaintiff's Complaint Direct Notice Of Her Dispute?**

A required element of Plaintiff's FCRA claim is a showing that she notified a credit reporting agency ("CRA") "directly" of her dispute of the accuracy of information furnished the CRA. *Nelson v. Chase Manhattan Mortg. Corp.,* 282 F.3d 1057, 1059-60 (9th Cir. 2002); 15 U.S.C. §§ 1681i(a)(1)(A), 1681s-2(b)(1), (c).

Plaintiff admits that before she filed suit she did not notify any CRA of a dispute about information NMAC furnished.  FAC, ¶¶ 51-52.  However, she contends that her attorney's filing and service of the complaint served as the required "direct" notice of a dispute by her because, to her and her attorneys' surprise, Experian, one of the three CRAs named in her complaint, sent NMAC an ACDV in response to receiving her complaint.  *See* ECF No. 53, 4:11-18.

Plaintiff is wrong.  The Ninth Circuit holds that a notice of dispute does not comply with § 1681(a)(1)(A) or even potentially trigger furnisher liability under § 1681s-2 unless the consumer sends the notice of dispute herself.  A notice of dispute sent to the CRA by the consumer's agent is not sent by the consumer "directly," and so does not start the process that alone can lead to furnisher liability under § 1681s-2(b).  *Warner v. Experian Information Solutions, Inc*., 931 F.3d 917, 921 (9th Cir. 2019) (pre-suit dispute letter sent by credit repair agency insufficient to trigger reinvestigation obligations).

Here, the complaint was written, signed, filed and served by Plaintiff's attorneys, not by Plaintiff herself.  The attorneys were Plaintiff's agents, just like the credit repair agency was the consumer's agent in *Warner*.  And, just as in *Warner*, the agent's sending the notice was insufficient in this case to trigger furnisher liability because the notice did not come "directly" from the consumer.  *Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1179-80 (E.D. Cal. 2005); *Peasley v. Verizon Wireless (VAW) LLC*, 364 F. Supp. 2d 1198, 1199 (S.D. Cal. 2005).

/ / /

Contrary to Plaintiff's contention, her review and approval of her attorneys' work does not make the complaint her "direct" notice.  *See Turner v. Experian Info. Servs., Inc.,* No. 3:16-cv-630, 2017 WL 2832738, at *8 (N.D. Ohio June 30, 2017); *Cohen v. Equifax Info. Servs., LLC*, No. 18-cv-6210, 2019 WL 5200759, at *4 (S.D. N.Y. Sept. 13, 2019), aff'd, 827 Fed. Appx. 14, 18 (2d Cir. 2020).  Not surprisingly, though thousands of FCRA cases are filed each year, Plaintiff cannot find a single one in which the complaint itself was treated as a notice of dispute triggering the furnisher's reinvestigation duty under § 1681s-2(b).[1]

Furthermore, treating a complaint as a notice of dispute would thwart Congress' purpose in limiting furnisher liability to disputes initiated by a consumer's direct notice of dispute to a CRA.  "Congress did not want furnishers of credit information exposed to suit by any and every consumer dissatisfied with the credit information furnished.  … [So,] Congress … provide[d] a filtering mechanism in § 1681s-2(b) by making the disputatious consumer notify a CRA and setting up the CRA to receive notice of the investigation by the furnisher."  *Nelson,* 282 F.3d at 1060.

The consumer notice requirement would not serve its purpose of filtering out most consumer complaints before they become federal lawsuits, and district court dockets would be clogged if the filing of suit in itself triggered potential furnisher liability, as Plaintiff contends.  A furnisher's exposure to suit cannot be limited after litigation has already begun. Nor can the notice of dispute procedure "filter"

---

[1]    The fact that one of the three CRAs named as defendants in this suit sent NMAC an ACDV after receiving Plaintiff's complaint is irrelevant.  "[A] private right of action against a furnisher of credit information exists only if the disputatious consumer notifies the CRAs in the first instance" *and* the CRAs then send the furnisher an ACDV.  *Roybal*, 405 F.Supp.2d at 1179-80.  That the CRA completes the second step does not satisfy the consumer's burden of initiating the process by giving the CRA direct notice of her dispute.  And, of course, it is up to a court, not the CRA to decide whether the complaint satisfies the direct dispute requirement under § 1681i(a)(1)(A).

disputes at that point.  Instead, after suit is filed, a court or jury must assume the burden of deciding whether the consumer's dispute has merit.

Rather than filtering out disputes and limiting furnishers' liability as Congress intended, the consumer notice requirement would, under Plaintiff's interpretation, only serve to increase furnishers' potential exposure, requiring them to conduct needless reinvestigations—or risk additional exposure to actual and statutory damages—each time a court paper or oral proceeding stated or restated the consumer's claim that the furnisher supplied inaccurate information.

**2.      Did NMAC Have A Duty To Reinvestigate Information That Experian's ACDV Did Not Mention?**

The ACDV Experian sent NMAC after receiving Plaintiff's complaint notified NMAC of only one dispute—that Plaintiff claimed she had paid in full and did not owe any sum to NMAC on a car lease.[2]  Can NMAC be held liable for not reinvestigating supposed inaccuracies in the information NMAC furnished which Plaintiff's complaint alleged but which Experian's ACDV did not mention?

The answer is no.  A furnisher's duty to reinvestigate disputed information extends only to inaccuracies specified in the ACDV.  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157-58 (9th Cir. 2009) (furnisher's investigation is judged only "in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.")

Here, Experian did not send NMAC a copy of Plaintiff's complaint along with its ACDV—in violation of its duty under the FCRA to send the furnisher any documentation of the dispute that was provided by the consumer.  15 USC 1681i(a)(2)(A-B); *Gorman*, 584 F.3d at 1157.  So, NMAC received no notice from Experian of the other ways in which Plaintiff claimed the NMAC-furnished

---

[2]      The ACDV stated:  "ACCT INVOLVED IN LITIGATION [¶] CONS CLAIMS PAID IN FULL DOES NOT OWE ON ANY LEASE."

Defendant's Memo. of Contentions of Fact and Law

information was inaccurate, such as by supposedly giving the impression that the lease accounts were still open with monthly payments still being made.

NMAC cannot be held liable under the FCRA for failing to reinvestigate those other claimed inaccuracies of which it received no notice from Experian.

**B.      Legal Issues Raised By Plaintiff's CCRAA Claim**

**1.      Was Plaintiff's Husband Her Agent So That His Actual And Constructive Knowledge Is Imputed To Plaintiff?**

As an affirmative defense, NMAC asserts that Plaintiff did not sue it within two years after she had actual or constructive knowledge of the alleged inaccuracy of the information NMAC furnished to CRAs—and, as a result, her CCRAA claim is barred by Civil Code § 1785.33.

Plaintiff has testified that she allowed her husband, Sergio, to handle the family's finances, access her credit reports and apply for credit in her name.  She acknowledges that he acted with her "full authorization" on financial and credit matters.

As set forth in NMAC's pending motion for summary judgment, extensive evidence exists showing that Plaintiff and/or someone acting with her authorization used her Credit Karma account, accessed her credit report, and disputed items that were believed inaccurate, including one of the NMAC accounts at issue.  Plaintiff concedes that she personally reviewed her credit, but has refused to explain who disputed the NMAC account at issue.  Plaintiff has suggested that her husband was more knowledgeable about her credit, and her attorneys have implied that plaintiff's husband Sergio may have been the one to dispute the NMAC account.

Depending on the testimony at trial, a legal question may arise as to whether Sergio acted as Plaintiff's agent so that his actual and constructive knowledge is imputed to Plaintiff for statute of limitations purposes.  NMAC's position is that Sergio was Plaintiff's agent.  His knowledge is imputed to her.  NMAC fully briefed

/ / /

this issue in its memorandum supporting its summary judgment motion (Dkt. #103, 13:11-17:2) and its reply memorandum on that motion (Dkt. #117, 3:9-4:4).

To briefly recapitulate that argument:  An agent's actual and constructive knowledge can be imputed to his or her principal for purposes of determining when the principal "discovered" a claim, commencing the limitations period.  Civ. Code, § 2332; *Bank of New York Mellon v. Citibank, N.A.*, 8 Cal. App. 5th 935, 956-57 (2017); *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007); *Stalberg v. Western Title Ins. Co.*, 230 Cal. App. 3d 1223, 1231 (1991).

### 2.    Does The Continuous Accrual Theory Apply To CCRAA Claims?

In response to NMAC's statute of limitations defense, Plaintiff argues that the continuous accrual theory applies to CCRAA claims.  Under this theory, each instance in which the defendant furnishes inaccurate information to a CRA is a separate violation, and the statute of limitations runs separately from each instance. *See* Dkt. #113, 12:5-14:11.

NMAC's position is that the continuous accrual theory does not apply to CCRAA claims.  There is no authority on this issue in the context of a CCRAA claim.  District court decisions are split on whether the continuous accrual doctrine applies to claims against furnishers under the FCRA,  *See Vasquez v. Bank of Am., N.A.,* No. 15-CV-04072-RS, 2015 WL 7075628, at *3 (N.D. Cal. Nov. 13, 2015) ("Federal courts are split on the question of whether each separate notice of dispute triggers a duty to investigate even if the information has been disputed previously."); *Ellis v. Advanta Bank*, No. 16-cv-06437, 2017 WL 1436249, at *3 (N.D. Cal. Apr. 24, 2017) (rejecting continuous accrual for § 1681s-2 claims).

For two reasons, the continuous accrual theory should not apply to the CCRAA's limitations provision.  First, the doctrine conflicts with Civil Code § 1785.33's wording.  Under that section, the two-year limitations period runs not from a violation—such as furnishing inaccurate information—but from the date the "plaintiff knew of, or should have known of, the violation."  Even if § 1785.25(a)

06888.0316/16390995.1                                    - 9 -

creates a recurring obligation, as Aranda contends,  § 1785.33's limitations period does not run from each breach of that obligation, but from the date the plaintiff knew or should have known of a violation. Once actual or constructive knowledge is gained, it applies equally to each re-furnishing of the same allegedly inaccurate data.

Second, application of the continuing or separate accrual doctrine to claims for alleged violation of § 1785.25(a) would thwart the CCRAA's purpose of ensuring that CRAs "report accurate information, thereby protecting consumers from the transmission of inaccurate credit information." *Sung Gon Kang v. Credit Bureau Connection, Inc*., No. 1:18-cv-01359, 2019 WL 1259444, at *4 (E.D. Cal. Mar. 19, 2019). To accomplish that goal, the CCRAA provided for prompt notice and correction of inaccurate information. It required furnishers to notify consumers when they submitted negative information. Civ. Code, § 1785.26(b), (c). The notice allowed consumers to promptly discover and dispute any inaccurate information, protecting against transmission of that data. Civ. Code, §§ 1785.16, 1785.25(c), (f). The notice also put consumers on inquiry notice of any inaccuracy of the submitted information, commencing the limitations period under § 1785.33 and thus encouraging consumers to take prompt corrective action.

### 3. Was NMAC Legally Obligated To Stop Reporting The Accounts Because They Were Too Old?

Plaintiff claims that the information NMAC furnished regarding her three lease accounts was "inaccurate" because the unpaid lease-end charges were so old that NMAC was legally required to stop furnishing information about the accounts to the CRAs.

Plaintiff is wrong.  The FCRA provision she relies on for her contention, 15 USC § 1681c(a)(4), applies only to CRAs, not furnishers like NMAC.  The cited section states that "no consumer reporting agency may make any consumer report containing … [a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years."  NMAC is not a CRA.  It made no

06888.0316/16390995.1                                      - 10 -

consumer report.  The section does not restrict the information a furnisher, like NMAC, may provide to a CRA.

Furthermore, § 1681c(a)(4) does not apply to a consumer report to be used in connection with "a credit transaction involving, or which may reasonably be expected to involve, a principal amount of $150,000 or more."  15 U.S.C. § 1681c(b)(1).  The consumer report at issue in this case was used in connection with Plaintiff's application for a $650,000 home loan.  So, §1681c(a)(4) did not apply and the report could properly include derogatory information about an account that had been charged off more than seven years previously.

Plaintiff is also wrong in claiming that NMAC furnished inaccurate information because it did not report the date of Plaintiff's first delinquency.  Again, the FCRA provision she cites does not support her claim.  Section 1681s-2(a)(5)(A) requires a furnisher to notify a CRA of the date of delinquency of an account only if the furnisher is reporting derogatory information.  In 2016, NMAC stopped reporting derogatory information about unpaid lease-end charges like those Plaintiff owed.  Because NMAC was not furnishing derogatory information to the CRAs, it was not required to furnish a date of first delinquency.

### 4. Can Plaintiff Recover Under The CCRAA Without Proof Of Actual Damage?

The evidence at trial will not prove Plaintiff's allegation that she suffered actual damage from the allegedly inaccurate information that NMAC furnished. NMAC's position is that proof of actual damage is an essential prerequisite to the award of any relief under the CCRAA.  Civil Code § 1785.31(a) only creates a cause of action for a "consumer who suffers damages as a result of a violation of" the Act.

Not surprisingly, case law follows § 1785.31(a)'s clear wording in holding that actual damage must be shown for recovery under the CCRAA.  *Trujillo v. First Am. Registry, Inc.*, 157 Cal. App. 4th 628, 637, 68 Cal. Rptr. 3d 732, 738 (2007),

06888.0316/16390995.1                                    - 11 -

Defendant's Memo. of Contentions of Fact and Law

disapproved on other grounds *Connor v. First Student, Inc.*, 5 Cal. 5th 1026, 1038 (2018) ("Actual damage, not 'inherent harm,' is required to state a CCRAA cause of action."); *Franklin v. Midwest Recovery Sys., LLC*, No. 8:18-cv-02085 SBD FMX, 2021 WL 1035121, at *4 (C.D. Cal. Feb. 5, 2021) (same); *Rara v. Experian Info. Sols., Inc.*, No. 16-cv-06376-PJH, 2017 WL 1047020, at *10 (N.D. Cal. Mar. 20, 2017) (same); *Abdelfattah v. Carrington Mortg. Servs. LLC*, No. 12-cv-04656-RMW, 2013 WL 5718463, at *2 (N.D. Cal. Oct. 21, 2013) (same).

### 5.   Punitive Damages:  Who Awards Them?<br>What Is The Proper Measure?

Plaintiff seeks punitive damages under both the CCRAA and the FCRA, in addition to her asserted actual damages.  Punitive damages are an available remedy only for willful violations of these statutes.  Civ. Code, § 1785.31(a)(2)(B); 15 U.S.C. § 1681n.

Plaintiff cannot prove that NMAC committed any willful violation,  However, in an abundance of caution, NMAC lists two additional legal issues that would arise if her claim for punitive damages needed to be addressed on the merits.

First, there is an issue as to who decides whether to award the damages. NMAC's position is that the Court must do so, sitting without a jury.

The statutory wording of the CCRAA makes this clear.  Unlike the rest of § 1785.31(a) which does not mention who grants the allowed relief, subdivision (2)(B) allows an award of "[p]unitive damages of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation as *the court* deems proper."  (Emphasis added.)

Similarly, a willful violation of the FCRA permits an award of punitive damages in such amount "as the court may allow."  Thus, "the court" as opposed to "the jury," must award any punitive damages in this case.

Second, there will be an issue as to how many willful "violations" of the CCRAA have occurred for which a $100-$5,000 award can be made.  NMAC's

06888.0316/16390995.1                                    - 12 -

position is that plaintiff cannot recover punitive damages based on multiple violations for the same conduct, solely because the allegedly inaccurate information was reported more than once or to multiple CRAs.  *See Stoff v. Wells Fargo Bank, N.A.*, No. 3:21-cv-00793 BEN KSC, 2021 WL 5449036, at *8 (S.D. Cal. Nov. 22, 2021).

## IV.   BIFURCATION OF PUNITIVE DAMAGES

Although NMAC does not believe the issue of punitive damages will be reached in this case, because there were no willful statutory violations, if that were to occur bifurcation of the punitive damage issue would be required, and NMAC requests that the Court order bifurcation.[3]

As explained above, the CCRAA and the FCRA specifically provide that punitive damages for a willful violation may only be awarded in the amount "the Court" deems proper.  Further, various legal issues would have to be resolved in connection with any punitive damage award, including the number of violations; the question of whether the particular violation caused any actual damage; and, the constitutionally permissible ratio of punitive to actual damages.  The Court is better suited than a jury to resolve these legal issues.

DATED:  February 21, 2023

SEVERSON & WERSON
A Professional Corporation

By: _____ */s/ Mark D. Lonergan* _____
        MARK D. LONERGAN

Attorneys for Defendant NISSAN MOTOR ACCEPTANCE COMPANY LLC f/k/a NISSAN MOTOR ACCEPTANCE CORPORATION

---

[3] Although the decision on punitive damages should be bifurcated—not decided at the same time or by the same trier of fact as the other issues to be decided by the jury—the issue to be decided by the Court would be very narrow, the amount of any punitive damages to be awarded.

06888.0316/16390995.1                                         - 13 -

## PROOF OF SERVICE

**Mayra Aranda v. Nissan Motor Acceptance Company LLC**
**Case No. 2:21-cv-03451**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is 595 Market Street, Suite 2600, San Francisco, CA 94105.

On February 21, 2023, I served true copies of the following document(s):

**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

on the interested parties in this action as follows:

| | |
|---|---|
| L. Tegan Rodkey<br>Price Law Group APC<br>6345 Balboa Boulevard Suite 247<br>Encino, CA 91316<br>Tel: 818-600-5526<br>Fax: 818-600-5426<br>Email: tegan@pricelawgroup.com | Attorneys for Plaintiff<br>MAYRA ARANDA |

Youssef H. Hammoud, Esq.
Price Law Group, APC
6345 Balboa Blvd., Suite 247
Encino, CA 91316
Tel: (818) 600-5596
Fax: (818) 600-5596
Email: Youssef@pricelawgroup.com
roxanne@pricelawgroup.com

David A. Chami (AZ: 027585)
(Admitted pro hac vice)
PRICE LAW GROUP, APC
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5515
F: (818) 600-5515
E: david@pricelawgroup.com

Defendant's Memo. of Contentions of Fact and Law

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 21, 2023, at San Francisco, California.


                                             /s/ Katrina D. Adkins
                                             Katrina D. Adkins

06888.0316/16390995.1                      - -